## Harrisburg Bank *against* Forster.

The cashier of a bank cannot avail himself of the statute of limitations to defeat an action on his note by the bank, unless he can show clearly a performance of all his duties in relation to the note, in exhibiting the same as due and unpaid, to the board of directors. The knowledge of the president or of individual directors of the bank, that the note was due and unpaid, is not a fact from which negligence can be inferred on the part of the bank, so as to allow the operation of the statute in favour of the cashier.

Fraud may be successfully replied to a plea of the statute of limitations.

ERROR to the common pleas of *Dauphin* county.

The Harrisburg Bank against John Forster, Esquire. This was an action of debt upon a promissory note, and was consolidated with four other suits which were also upon promissory notes. The notes were 30th of April 1823, for 3300 dollars; 26th of June 1822; for 831 dollars 72 cents; 30th of June 1819, for 700 dollars; 30th of June 1819, for 500 dollars. There were two matters urged in defence: the first an alleged contract on the part of the bank to allow a certain additional compensation to the defendant as cashier; and the second was the act of limitations. To this plea the plaintiff replied specially as follows:

Plaintiff replies to defendant's said plea, of *non assumpsit infra sex annos*, as follows, to wit: And the said Harrisburg Bank, as to

the said plea of the said John Forster, by him above pleaded, saith that the Harrisburg Bank, by reason of any thing by the said John Forster in that plea alleged, ought not to be barred from having and maintaining the said bank's aforesaid actions, against the said John Forster; because the bank saith, that before the making of any of the said promises of the said John, in the said statement contained, to wit; on the 19th day of April, A. D. 1815, the said John Forster was duly appointed, and became the cashier of the said Harrisburg Bank, and so continued to be such cashier thereof until the 25th day of November A. D. 1833, to wit: at said county—and during all that time was entrusted with, and had the custody, keeping, and care of the notes, bonds, checks, drafts, books, papers and accounts of the said bank, and with the receiving of the debts due to said bank, and the custody, care, and keeping of the cash of said bank; and during all that time it was his business and duty, as such cashier, to collect and receive the moneys due to said bank on promissory notes, bills, bonds, drafts, checks, and other securities; and from time to time to give prompt, full, accurate, and true information to the president and board of directors of the said bank, of outstanding notes, bills, drafts, checks, and other evidences of debt, and of the failure of debtors to pay and satisfy the same. And as such cashier, in manner aforesaid, the said John had the possession, custody and keeping of the said several promissory notes, bills, drafts, bonds, and checks in the several statements in this suit mentioned, from the time they were made respectively until the said 25th day of November 1833, viz., at said county. And the said bank further saith, that the said John, not only did not pay and satisfy the moneys due on said notes, nor any of them; but from the several times when they respectively became due and payable, the said John did deceitfully, fraudulently and covinously, and in violation of the trust and confidence reposed in him by the said bank, and of the duty so assumed by him as such cashier, conceal the said promissory notes so by him executed, from the said president and directors of the said bank and from their knowledge, and did deceitfully, fraudulently, and covinously neglect and refuse to give such information to the said president and derectors of the said bank, of his, the said John's, failure to pay the same; insomuch that the said bank, and the president and directors thereof, by reason of such deceitful, fraudulent, and covinous concealment, neglect and misconduct of the said John, were 'and continued, during all the time aforesaid, entirely ignorant of the facts aforesaid and of the indebtedness of John as aforesaid, and supposed and believed, as they had good reason to do, that the money mentioned in the said several notes had been paid by the said John, as they ought to have been, when they respectively became due, until the first day of December 1833, (and within less than six years before the commencement of this suit, and those to it consolidated as aforesaid,) when the said bank accidentally discovered the said conceal-

VIII.—B*

[Harrisburg Bank v. Forster.]

ment, and fraud, and misconduct of the said John, and that the said notes still remained unpaid and unsatisfied, and the moneys mentioned therein still due to the said bank, to wit: at said county; and this the said bank prays may be inquired of, &c.

As to the facts, whether the condition of the notes was fairly presented to the board of directors as the cashier was bound by his duty to do, or whether they were concealed or withheld, they were subject of proof, and much evidence upon it was given. And the defendant also gave evidence tending to prove that their condition was known to the president and some of the individual directors. This gave rise to the only question of law in the case and on that subject, in answer to certain points propounded to the court, they instructed the jury as follows:

It appears upon the face of the notes, that they were due and payable more than six years previous to the commencement of this suit. If nothing more were shown, the statute of limitations would be a bar to the plaintiff's recovery; by the statute of limitations, a suit cannot be sustained after six years have elapsed from the time suit might have been brought. It was, therefore, incumbent on the plaintiff to show something which would by law prevent the operation of the statute of limitations, until within six years from the commencement of this suit. Plaintiff has alleged that the defendant's being in the situation of cashier of plaintiff, having the custody and control of plaintiff's books and evidences of debt, these notes included, is sufficient to prevent the operation of the statute of limitations upon this debt between these parties. I am of opinion, that by law this does not prevent the operation of the statute of limitations. Plaintiff has further alleged that defendant fraudulently concealed from plaintiff, and from plaintiff's agents, the directors of the bank, the knowledge of these notes becoming due and remaining unpaid, until within six years from commencement of this suit. I am of opinion, that in law this is a valid answer to the plea of the statute of limitations. You will, therefore, decide from the evidence, whether this allegation of fraudulent concealment is true; if true, it prevents the operation of the statute of limitations. What will fall within the description of a fraudulent concealment, it is not easy to define with precision; it is not every concealment that will be fraudulent in contemplation of law. If a purchaser undertakes to inspect and judge for himself of the quality of goods, and the vender affords him sufficient opportunity to examine, although the vender commends the goods and does not communicate defects that are within his knowledge, and which the purchaser might have discovered with ordinary care, the concealment will not in general be fraudulent. I will say, so far as regards this case, to make the concealment by defendant fraudulent, it should be such as would prevent the directors of the bank, with the use of ordinary care and diligence, from obtaining a knowledge of these notes having become due and remaining unpaid. If the directors knew that the notes were due

and unpaid, or if, by ordinary care and diligence, they might have known they were due and unpaid, the statute of limitation operates; if, on the other hand, they did not know the notes were due and unpaid, and if a knowledge of this fact was so concealed from them by the management of defendant, that they could not, by ordinary care and diligence, have discovered it until within six years of the commencement of this suit, the statute of limitations does not operate.

If the directors knew, or by ordinary care and diligence might have known, that these notes were due and unpaid, after they were due, within six years from their becoming due, and from any cause they omitted to bring suit and enforce payment, and afterwards defendant, by fraudulent concealment, kept them from the notice of the directors, it would not prevent the statute of limitations from operating to defeat the recovery of the notes, after six years from the time the directors first knew they were due and unpaid. The time for enforcing payment having come, and being known to the directors, the time prescribed by statute, within which suit should be brought, would begin to run and would continue to run, though defendant afterwards should, by fraudulent concealment, keep the notes and the fact of their being due and unpaid, from the notice or knowledge of the directors.

It is said the note for 831 dollars 72 cents, dated 26th June 1822, is on a footing different from the others, and that the statute of limitations cannot be applied to it. That note appears to have been given for two notes for which defendant had become liable as endorser, one drawn by M'Intosh, and one by Joshua Elder, Jun. The notes of M'Intosh and Elder, with defendant as endorser, are entered in the books of the bank in the manner of other notes. The note of defendant for the amount of these notes is not entered in the books. If the directors knew of the defendant's liability as endorser on these notes, they knew what was requisite to enable them to enforce payment, and might have compelled payment, or the giving a new security. You will judge how far the knowledge of these facts was concealed from the directors by defendant, if the directors did not know them, and whether they were fraudulently concealed, referring you to what I have already said with regard to what constitutes a fraudulent concealment.

The statute of limitations is not a bar to the recovery of the note for 3300 dollars, because defendant promised to pay it in November 1834.

*Alexander*, for plaintiff in error, cited 2 *M'Cord* 426; 3 *Whart. Rep.* 60; 1 *Watts* 120; 4 *Serg. & Rawle* 315; 1 *Pick.* 435; 6 *Watts* 381; 4 *Har. & Johns.* 430; *Blan. on Lim.* 81; 1 *Law Lib.* 43; 7 *Watts* 473; 3 *Dessau.* 239.

*M'Cormick*, for defendant in error, cited 2 *Rawle* 302; 7 *Johns.*

*Chan.* 90; 1 *Watts* 271; 3 *Mass. Rep.* 267; 9 *Serg. & Rawle* 202;
17 *Johns.* 176.

The opinion of the Court was delivered by

ROGERS, J.—This suit was brought to recover the amount of four
promissory notes, which were executed by the defendant.    The de-
fendant took two grounds of defence; First, set-off, and secondly,
the act of limitations.

We fully agree with the court, that as to the first ground, the
defendant signally failed.    However meritorious his conduct may
have been, and how much it may have commended itself to the
liberality of the directors, yet no contract has been proved which
can be made the subject of set-off.

But the defendant insists that he is protected by the act of limita-
tions.    The notes have been due more than six years; so that, unless
they come. within some excepted class of cases, they are barred.
The statutes of limitations, which are statutes of repose, are certainly
very beneficial, and of the highest importance.    They are passed
to assure titles to land, to quiet possession, to guard against per-
juries, and more especially to prevent the commission of fraud and
injustice.    To prevent that, which was intended to guard the citizen
against fraud and injustice, being made an instrument or a shield to
fraud, the court has found it absolutely necessary to introduce excep-
tions to the operation of the statute.    And one to which the circum-
stances of this case more particularly applies, is where there has been
fraud or concealment on the part of the party seeking the protection
of the statute, and especially when that party stands in a fiduciary
relation.    The plaintiff insists he ought not to be barred, because
the defendant was the cashier of the bank from the 19th of April 1815,
until the 25th of Nov. 1833; that during that time he had the custody
and care of the notes on which suit was brought.    It was his duty,
on the non-payment of the notes at maturity, to make a full, accu-
rate and true statement of the case to the board of directors.    And
this was necessary, that they might take some order as to the
measures to be taken; whether they would permit them to lie over,
or would order their immediate payment.    Unless this was done, the
omission to do his duty amounts to such a concealment of the state
of the case as in contemplation of law would deprive him of the
protection of the statute.    We cannot think, under the circum-
stances, that he is entitled to the benefit of the presumption, that
every thing is presumed to have been rightly done.    It is incumbent
upon him to prove affirmatively, that he brought the transaction
distinctly before the board, and that it was in consequence of their
neglect that it was suffered to lie over without suit, or any steps
taken to enforce payment.    It is at all times a dangerous thing to
permit transactions such as this to take place between the officers
of the bank and the institution.    And before an officer should be
permitted to avail himself of such a defence, it is not too much to

require that he should show that in all things he has complied with his duty. In reference to Alward's testimony, the court charged the jury, that if the directors knew, or by ordinary care and diligence might have known, that these notes were due, and unpaid after they were due, within six years from their becoming due, the act of limitations was a bar, unless they were fraudulently concealed from the knowledge of the directors. It would be unreasonable that the knowledge of the president, or any one of the directors, of the non-payment of the notes, should enable the defendant to avail himself of the act. It is very possible that the president may have seen these notes in the bundles, without having his attention particularly directed to them. And it also may possibly be, that when the board had the bundles before them, selecting from them such as were to be put in suit, these notes may not have escaped the observation of some of the directors. But be this as it may, this is not deemed sufficient, as it was the duty of the cashier, standing in the relation he did to the bank, to prove that the failure to pay was distinctly presented to them as a board, and that from some cause, either the fact as alleged, that they intended to remunerate General Forster for his disinterested conduct in relation to the reduction of his salary at the time the bank was under pecuniary difficulties, or for some other cause, they refrained from putting them in suit. It must be observed that the directors, as well as the cashier, are but trustees for the benefit of the stockholders, and that each have their appropriate duties to perform. Among others, it was especially the duty of the cashier, particularly in his own case, to give distinct information to the board of directors, sitting as a board for the transaction of the business of the bank, that the notes had arrived at maturity and had not been paid. It must not be left to conjecture or inference, that some of the directors of the board were cognizant of the real state of the transaction.

The court put the case on the ground of a fraudulent concealment, from the directors, of the fact that the notes were unpaid. They repudiate the idea that his situation as cashier, having the custody and control of the books of the bank and the evidences of debt, will not prevent the operation of the act of limitations. We are of the opinion that that position is correct, provided it had been followed with distinct proof that the cashier gave full, explicit and prompt information to the board of the dishonour of the notes. To enable him to protect himself by the act of limitations, he must show a literal compliance with his duty as cashier, in relation to these notes. The security of the stockholders requires the utmost good faith on the part of the officers of the bank, and to enable them to shield themselves by a statute made to prevent fraud, they must adhere strictly to their duty. The same principle will also apply to a director, whose note may be suffered to lie over. If the cashier omits to lay the matter before the board, he must do it himself, or consent to forego the benefits of the act. In justice to the defendant

[Harrisburg Bank v. Forster.]

I must say, that we put this case on the ground of felony, without the slightest idea there was on his side any intentional concealment or meditated fraud whatever. From the testimony of Mr Alward, it appears his notes were in the same bundle with the notes of the president and some of the directors which were unpaid.

In this case, the discount of the notes was known to the directors; that came officially before them. But it has not been shown, this we think indispensable, that they had official information that they remained due and unpaid. They might, it is true, with diligence and care, have known the real situation of the notes, but that was not their peculiar duty. It was part of the official duty of the cashier to take the proper measures to secure payment of the notes, to inform the directors of their dishonor, that legal means might be taken to collect the amount due.

The court say, if the directors knew, or if by ordinary care and diligence might have known that the notes were due and unpaid, the statute of limitations operates. This position must be taken with the important qualification that they had official information that they were unpaid. The case does not depend upon what is termed ordinary care and diligence on the part of the directors, when there has been an omission of duty on the part of the cashier, who seeks to protect himself from payment. Until the directors have this knowledge, it is the opinion of the court the statute does not begin to run against the bank, notwithstanding the notes are due. In the complicated concerns of a bank, it is impossible that the directors can be sufficiently aware of the non-payment of all notes and securities belonging to the institution. A great deal must depend upon the cashier, whose peculiar duty it is to attend to that part of the business of the bank.

A doubt was suggested whether fraud was an answer to a plea of the act of limitations. This point was made in Turnpike *v.* Judd, 3 Mass. Rep. 207, where it was decided that a plaintiff may reply fraud to a plea of the statute of limitations, and avoid the plea.

Judgment reversed, and *venire de novo* awarded.