BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF SOMERSET v. JOHN·V. VEGHTE.

1. Courts cannot engraft on the statute of limitations exceptions not contained therein, however inequitable the enforcement of the statute, without such exceptions, may be.

2. The fraudulent concealment of a cause of action does not justify the inference of a new promise, which will take the action out of the operation of the statute at law; nor does it estop defendant from setting up the bar of the statute at law. Relief, in such case, must be sought in a court of equity.

3. In an action of *assumpsit*, a plea of the statute of limitations was interposed. A replication setting up a fraudulent concealment of the cause of action until a time within the statutory limit of six years, and seeking thus to avoid the bar of the statute—*Held*, bad on demurrer.

In *assumpsit*.

Plaintiff's action was brought in the Somerset Circuit. It was *assumpsit*, and the declaration contained only the common counts.

Defendant pleaded (among other pleas) the statute of limitations.

To this plea, plaintiff filed two replications, of which the following was one:

"And the said plaintiffs, as to the said plea of the said defendant by him secondly above pleaded, by leave of the court

here, for that purpose first had and obtained, according to the form of the statute in such case made and provided, in this their amendment to the second replication by them above pleaded, to the said second plea of said defendant, by their attorneys, say that they ought not to be barred from having or maintaining their aforesaid action thereof against the said defendant, by reason of anything by the said defendant in that plea alleged, because they say that, at the time when the said several causes of action in the said declaration mentioned, and each and every of them, did accrue to them, the said plaintiffs, the said defendant was county collector of the county of Somerset, and treasurer of all and singular the moneys of the plaintiffs, and then and there, to wit, at Somerville, in the county of Somerset, in his capacity of county collector and treasurer of the plaintiffs, received the said several sums of money in the said declaration mentioned, to and for the use of said plaintiffs, they being the moneys of the said plaintiffs, and fraudulently and deceitfully converted and disposed of them to his own use, and fraudulently concealed from the plaintiffs the fact of the receipt of said moneys by him, and the conversion of the same to his own use, and continued to fraudulently conceal the receipt of the same and the conversion thereof to his own use, and continued to hold the office of county collector of the county of Somerset, and treasurer of all and singular the moneys of the plaintiffs, until within six years next before the commencement of this suit, so that the said plaintiffs did not, and could not, by reason of the fraud, deceit and wrong so concealed as aforesaid, and the office held by said defendant, discover the said causes of action, until within six years next before the commencement of this suit; and this the said plaintiffs are ready to verify. Wherefore, they pray judgment and their damages by them sustained on occasion of the non-performance of the said several promises and undertakings in the said declaration mentioned, to be adjudged to them, &c."

Defendant demurred to this replication, and the question

thus arising was certified to the Supreme Court for its advisory opinion.

Argued at June Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON and MAGIE.

For the plaintiffs, *J. D. Bartine* and *R. V. Lindabury*.

For the defendant, *A. A. Clark*.

The opinion of the court was delivered by

MAGIE, J. The facts disclosed in this replication, and admitted by the demurrer, present a case appealing so strongly for relief, that if the conclusion that plaintiff is debarred from relief by the provisions of the statute of limitations, were necessary, it would be reached with the utmost reluctance.

But the hardship of plaintiff's case does not thus press upon the court. It has not been contested, on the argument, that, under the circumstances here disclosed, appropriate and adequate relief may be afforded plaintiff by an application to the Court of Chancery, which, under our system of jurisprudence, retains general equity powers.

That such relief may there be granted is a conclusion warranted by a long course of decision and precedent, eliciting no objection either from counsel, courts or commentators on this branch of the law. *Angell on Lim.*, ch. XVIII; *Story Eq. Jur.*, §§ 1521, 1521, *a*, *b*; *Booth* v. *Lord Warrington*, 4 *Bro. P. C.* 163; *South Sea Co.* v. *Wymonsdell*, 3 *P. Wms.* 143; *Bond* v. *Hopkins*, 1 *Sch. & Lef.* 413, 428; *Hovenden* v. *Lord Annesley*, 2 *Sch. & Lef.* 607, 629; *Blair* v. *Bromley*, 5 *Hare* 542; *S. C.*, 2 *Phil.* 354; *Todd* v. *Rafferty's Adm'rs*, 3 *Stew. Eq.* 254; *affirmed*, 7 *Stew. Eq.* 566.

Whether this jurisdiction of courts of equity is to be vindicated on the ground that the statute of limitations does not bind those courts, or on the more reasonable ground (*Hovenden* v. *Lord Annesley, supra; Gibbs* v. *Guild*, cited below,) that there

exists in them an inherent power to prevent one from exercising even his legal rights—whether existing at common law or created by statute—when, by his fraudulent conduct, he has made it inequitable that he should be permitted to exercise those rights. And whether the relief in those courts would be by way of injunction, to prevent reliance on the bar of the statute, (*Doughty* v. *Doughty*, 2 *Stockt.* 347,) or by way of acquiring jurisdiction for the purpose of relieving from the fraud, and retaining it to administer all the relief the injured party is entitled to, (*Blair* v. *Bromley, supra,*) are questions unnecessary to discuss. It is sufficient that it seems conceded and plainly appears that, under the circumstances of this case, the plaintiff is not left without adequate remedy.

The question presented by this demurrer is whether the relief sought by the plaintiff is capable of being afforded by a court of law, bound by its rigid rules and possessing no equity powers to mitigate their rigor.

The plea of the statute of limitations presents, if true, a complete bar to plaintiff's action. The replication seeks to remove this bar, by alleging that defendant fraudulently concealed the cause of action until the time limited by the statute had expired, and until within six years previous to the commencement of the action. Does such fraudulent concealment answer and remove the bar of the statute?

Counsel have not favored the court with any theory on which the contention made by them can be rested on a logical basis. They simply urge the inequity of denying relief, and appeal to authority as sanctioning the allowance of such relief at law.

In casting about to find a theory upon which this result may be plausibly put, it is manifest we must start with the proposition that, whatever may be the fact as to courts of equity, the provisions of the statute of limitations do bind courts of law, and are to be administered therein, in accordance with their plain meaning, although apparent hardship result. Chief Justice Hornblower expresses this view with his accustomed vigor: " The statute of limitations makes the

lapse of time a positive and legal bar. When once it has begun to run against a person under no legal disability, it pursues its course, uninterrupted by any subsequent events; and when the period prescribed by the statute has elapsed, the bar is complete, and its force can neither be strengthened or impaired by anything that has happened in the meantime. * * * The statute leaves nothing to presumption. Time alone settles the rights of the parties by *the grant force of the statute.*" *Thorpe* v. *Corwin, Spenc.* 311, 317.

The statute of limitations contains various express exceptions from the operation of its provisions. Some of them relate to the character, condition or residence of the persons affected. Some relate to the nature of the cause of action. If such exceptions had not been expressly made, there is high authority for the proposition that a court of equity could not create them, however meritorious the case might be. *Demarest* v. *Wynkoop*, 3 *Johns. Ch.* 129, 143, and cases there collected.

There can be no pretence that the replication presents a case within any of the express exceptions of the statute. Can there be an implied exception covering the case here presented?

To admit this would be in opposition to a cardinal maxim which forbids a resort to implication where the intent has been expressed.

Whether courts of equity may engraft an exception by implication, upon this statute, or not, it has been well settled that courts of law cannot. In *McIver* v. *Ragan*, 2 *Wheat.* 25, Chief Justice Marshall, in regard to what was claimed to be an inequitable result, produced by a statute of limitations, declared: "If this difficulty be produced by the legislative power, the same power might provide a remedy, but courts cannot, on that account, insert in the statute of limitations an exception which the statute does not contain."

A further consideration may be suggested. Our statute was taken from that of 21 *James I., c.* 16. That an exception of this nature was not within the legislative intent, origi-

nally, will, I think, appear from the fact that, in the statute of 3 and 4 *Wm. IV.*, c. 27, there is a clause (§ 26) expressly saving the remedy under that statute from the bar of that statute, in cases of concealed fraud.

Some of our sister states have also thought it proper to insert in their statutes of limitation, having the same source as ours, exceptions of the case of a fraudulent concealment of the cause of action, out of the operation of these acts.

It seems manifest that the replication cannot be sustained on the ground that the case presented is within an implied exception to the statute, capable of being recognized at law.

There is, however, a class of cases in which the original cause of action has been barred by the statute, and which are nevertheless, said to be "taken out of the statute" or exempted from its operations. This class exists only among actions of *assumpsit.* It will be unprofitable to go over the various phases the questions arising thereon have assumed. It will be sufficient to state, briefly, that the construction now given the statute, in such cases, is as follows: The statute bars the action, but may be waived. If its protection is sought, it must be pleaded; if not pleaded, it is waived. If pleaded, the bar of the statute having left unaffected the moral obligation to perform the original contract, such obligation may be the basis of a new promise, which, if made within the statutory period, revives the original cause of action and avoids the bar of the statute. Such new promise may be express or implied, from circumstances which justify such an inference. Such circumstances must amount to an unqualified admission of the continued existence of the obligation, and must, at least, not negative the debtor's willingness to perform it. *A' Court* v. *Cross,* 3 *Bing.* 329; *Bell* v. *Morrison,* 1 *Pet.* 351; *Belles* v. *Belles,* 7 *Halst.* 339; *Van Dike* v. *Van Dike,* 3 *Green* 289, 297.

It may be remarked that this construction gave rise to so much evasion of the benefits intended by the statute, upon inferences of a new promise, dependent on questionable evidence, that Lord Tenterden's act was passed, requiring such

promises to be evidenced by writing. That legislation has lately been adopted in New Jersey. *Rev.*, *tit.* "*Limitations*," *p.* 596, § 10. It does not, however, affect this case.

Can a new promise be inferred from the facts stated in this replication?

It is at least doubtful if this question is raised by this demurrer. The usual rule is that, if a new promise is to be relied on, the replication must conform thereto. This replication does not set out a new promise, nor aver that the action accrued within six years. On the contrary, it manifestly relies on the original obligation.

But if the replication were *actio accrevit, infra sex annos,* and the facts here presented were offered in evidence, would they justify the inference of a new promise? Is the fraudulent concealment of a cause of action, until it is barred by the statute, an unqualified acknowledgment of a continued and existing obligation, the party's willingness to perform which is not denied or contradicted? To thus state the question, seems to me to answer it. Concealment cannot be considered an unqualified acknowledgment, and it directly negatives a willingness to perform.

If the action were founded on the fraud, and demanded damages, the question presented might be quite different.

It has been further suggested that defendant may be treated as estopped, by his conduct, from denying either that a new promise has been made, or that the original promise was made within the statutory period.

The doctrine of estoppel has been applied to prevent a resort to the defence of the statute of limitations, even at law. In the case of *Quick* v. *Corlies,* 10 *Vroom* 11, this court held that one who had agreed with his creditor to waive the defence of the statute, was estopped, after the agreement had been acted upon, from availing himself of that defence at law. It will be observed that the conduct of the debtor, in that case, induced the belief of the continued existence of the contract, and its availability in an action, and that belief was acted upon. He was therefore held to be estopped from deny-

ing what his conduct had induced the other party to believe and act upon.

But, in this case, the conduct of the debtor is not such as to raise this estoppel. What he did never induced his creditor to believe that a new promise had been made, or that the old obligation was continuing, and intended to be unaffected by the statute. On the contrary, the debtor's conduct was such as to induce the belief that there was no obligation of any kind whatever. The delay of the creditor was due, not to a belief that the statute would not be resorted to as a defence, but to the belief that there was no cause of action. If defendant is estopped, the estoppel would only bar him from denying the existence of the facts which his conduct had asserted to exist. Such estoppel would manifestly be too narrow, and would not avail to exclude this defence.

All the consideration I have been able to give the subject has failed to afford me any ground on which a plausible claim can be made in support of the proposition that a court of law can permit this mode of avoiding the bar of the statute of limitations.

That a court of law is often powerless to afford the relief which the inherent justice of a particular case seems to demand, is no new thing. It furnishes a reason for the existence of the Court of Chancery.

Analogous cases may readily be found. When contracts void by the statute of frauds have been so performed as to render it unjust to refuse to complete them, the Court of Chancery can compel their performance. Yet, a court of law would be powerless to afford effectual relief, for no one would pretend that it could treat the contract as taken out of the operation of that statute. The sole remedy at law is by an action to recover compensation for what has been done regardless of the contract, a remedy which may be, and generally is, inadequate to afford complete redress. *Birchhead* v. *Cummins*, 4 *Vroom* 44; *McElroy* v. *Ludlum*, 5 *Stew. Eq.* 828.

It may be added that the remedy required in this case can

be administered in a court of equity much more appropriately than in a court of law.

Plaintiff's counsel having appealed largely to authority, I proceed to examine the cases cited by them with some particularity, because it must be admitted that plaintiff's claim seems to have sanction from the opinions of able and learned jurists.

The first claim of plaintiff's counsel is that the English cases have established this construction of their statutes, from which ours was taken. I am unable to come to this conclusion. A careful examination convinces me that there is to be found in the English reports no single solemn adjudication in favor of the contention of plaintiff, while there are decisions against it.

The earliest case cited is that of *Bree* v. *Holbech, Doug.* 655. It was an action of *assumpsit* for money had and received. To a plea of the statute of limitations, the plaintiff replied that defendant had obtained the money on false representations, the falsity of which had not been discovered until within six years. There was a demurrer. Lord Mansfield, in overruling the demurrer, which he did on the ground that fraud was not asserted in the replication, used this language: "There may be cases, too, which fraud will take out of the statute of limitations." This, it will be perceived, falls short of asserting that fraud would, in certain cases, avoid the statute at law. But, after overruling the demurrer, leave was given to plaintiff's counsel to amend the replication, if, upon inquiry, the facts would support a charge of fraud. There has been much discussion whether the case expresses, in this respect, the opinion of the court, or only a *dictum* of Lord Mansfield. Those who take the view contended for by plaintiff in this case, cite it as authority. Those who take the opposite view, insist it is *dictum*. But it is manifest it was not a deliberate and considered judgment. The question was not argued. The leave to amend was necessary to put the case in train for such argument. I cannot consider it as presenting more than the opinion of Lord Mansfield, inci-

dentally expressed, but even in this way, bearing the weight due to even his lightest utterances.

Other English judges have given expression to similar views, but, in every instance, the point was foreign to the case under consideration, and unnecessary to its determination.

Thus, in *Granger* v. *George*, 5 *B. & C.* 149, which was an action of trover, the statute was held to be a bar, although plaintiff did not have knowledge of the conversion until within six years before the suit was commenced. The ground of the opinion of Chief Justice Abbott was, that the statute began to run from the time of the act of conversion, notwithstanding the plaintiff was ignorant of the act, but he adds this qualification : " There not being evidence of any fraud practiced by defendant, in order to prevent the plaintiff obtaining knowledge of what had been done." But this expression was uncalled for, because the question presented was simply whether ignorance of the tort would prevent the running of the statute. In that respect, the case was decided in accord with *Short* v. *McCarthy*, 3 *B. & Ald.* 626, and *Brown* v. *Howard*, 2 *Bro. & B.* 72. See, also, *Howell* v. *Young*, 5 *B. & C.* 259.

So, in *Clark* v. *Hougham*, 2 *B. & C.* 149, which was an action of *assumpsit* with a plea of the statute and a replication of a new promise, it was held that, under such a replication, fraud was not an answer to the plea. Whether fraud would have been an answer, if specially replied, was not decided, but Justice Best intimated his opinion that it would, basing it upon Bree *v.* Holbech. But the discussion was unnecessary in the case, because the court held that a new promise had otherwise been proved.

These opinions are doubtless entitled to great respect, but are not to be considered authority. They have not been followed, but a contrary view has been distinctly enunciated.

The case of *Imperial Gas Light Co.* v. *London Gas Light Co.*, 10 *Exch.* 39, is in point. It was an action of trespass for making connections with the gas-pipes of plaintiff and taking gas therefrom. To a plea of the statute of limitations,

the plaintiff replied that it had been prevented from acquiring knowledge of the trespass by the fraud of defendant, until after the time limited by the statute had run. This replication was held to be bad by Pollock, C. B., and Alderson and Platt, BB. This is a direct adjudication that the fraudulent concealment of a cause of action will not avoid the running of the statute of limitations.

This case was followed by *Hunter* v. *Gibbons*, 1 *H. & N.* 459. The latter case was an action which arose after the Common Law Procedure act of 1854. It came before the court on an application to be permitted to reply to a plea of the statute of limitations an equitable answer, viz., that the trespasses declared on had been fraudulently concealed from plaintiff until within six years before the commencement of the action. The application was refused. The court—Pollock, C. B., Alderson, Bramwell and Watson, BB.—agreed that the plaintiff's remedy was by a direct application to a court of equity, and that, even under the act which permitted an equitable answer to avoid a plea, the fraudulent concealment of the cause of action would not avail to avoid the bar of the statute at law. In the opinion of the Chief Baron, the following language occurs : " If a man could reply to a plea of the statute, that his debtor had prevented him from suing by fraud, the equitable replication would be as common as the promises of payment which people used to prove before Lord Tenterden's act."

In the late case of *Gibbs* v. *Guild*, L. R., 8 *Q. B.* 296, and *S. C., L. R.,* 9 *Q. B.* 59, the question was whether, in an action to recover money lost by defendants' fraudulent representations, a reply to the plea of the statute, that the existence of the fraud was fraudulently concealed until within six years, was good or not. In the court below, Field, J., upheld the reply, relying wholly upon the provisions of the Judicature act as modifying the common law rules. In the Court of Appeal, the case was heard before Lord Coleridge, C. J., and Brett and Holker, L. JJ. The first two unite in affirming the judgment below, on the same ground relied on by Field, J. Both

of the judges discuss the question as it would have been presented at law before the passage of the Judicature act. While each expresses doubt whether the principles of *Imperial Gas Light Co.* v. *London Gas Light Co.*, and *Hunter* v. *Gibbons, supra,* would have prevailed in a court of review, they both admit that those cases are direct decisions against such a replication at law. Lord Coleridge says, " It must be clearly admitted that, if we went upon the principles of strict common law actions and strict common law pleadings, there are at least two decisions directly in point, in favor of defendant, that such a replication would not be good," referring to the two cases above mentioned.

The conclusion therefore is, that the authority of the English cases is against the plaintiff's contention.

Upon an examination of the American cases, relied on by plaintiff, much apparent support seems to be afforded the contention here made on the part of plaintiff. But I think most of them can be explained either because of peculiarity in the cases themselves or because of the peculiar construction of the courts deciding them.

Thus, the cases in Massachusetts are favorable to plaintiff's contention and directly in point. They are *Turnpike Co.* v. *Field,* 3 *Mass.* 201; *Horner* v. *Fish,* 1 *Pick.* 435; *Wells* v. *Fish,* 3 *Pick.* 73, and *Farman* v. *Brooks,* 9 *Pick.* 212. I do not stop to examine them in detail. It seems to me sufficient to make three observations respecting them, viz.: 1. The authorities relied on to support them are all cases in equity except Bree *v.* Holbech; 2. Equitable remedies were administered in that state by the same courts charged with the administration of legal remedies; and, 3. Notwithstanding these decisions, the legislature of that state felt constrained to insert a provision in their statute of limitations, that, when there has been a fraudulent concealment of a cause of action, the action may be commenced within a certain period after discovery. *Rev. Stat., Mass., c.* 120, § 12.

So there are *dicta* and decisions in Maine to the same effect, to be found in *Bishop* v. *Little,* 3 *Greenl.* 405; *Cole* v. *Mc-*

*Glathry*, 9 *Me.* 131, and *Thurston* v. *Lowder*, 40 *Me.* 197. The same observations may be made respecting these cases which are above made respecting the Massachusetts cases. A similar provision has also there been inserted in the statute of limitations of that state. *Rev. Stat., Me., ch.* 146, § 18.

The courts of Pennsylvania have expressed similar views in the cases of *Jones* v. *Conoway*, 4 *Yeates* 109 ; *Pennock* v. *Freeman*, 1 *Watts* 401, and *Harrisburg Bank* v. *Forster*, 8 *Watts* 12. These decisions do not discuss principles or cite authorities, except the early Massachusetts cases. The equitable remedies are also, in this state, administered by the same courts that administer legal remedies.

The case of *Bailey* v. *Glover*, 21 *Wall.* 342, involved the question of the true construction of a clause in the bankrupt act, limiting actions at law and in equity, by or against assignees, to a period of two years after the right of action had accrued. A bill for relief had been filed in equity, by an assignee, to set aside a conveyance alleged to have been fraudulently made by the bankrupt before filing his petition. The conveyance had been made more than two years before the bill was filed. To avoid the bar of the statute, the bill alleged that the fraud had been concealed by the bankrupt. A demurrer to the bill was sustained below, but this decision was reversed in the Supreme Court, the opinion being read by Miller, J. The sole question was as to the right to maintain an action in equity under the circumstances stated in the bill. As has been heretofore shown, there is a long line of authorities justifying such a proceeding in equity. The learned judge recognized this doctrine, which was quite sufficient to sustain the bill demurred to. But he thought proper to state two additional propositions. One was that there is a weight of authority in favor of the view that the statutory bar does not begin to run until the discovery of the fraud on which the action is based, if the injured party remains in ignorance, without fault, and even though there is no active concealment of the fraud by the wrong-doer. The other was that there is a weight of authority, both in England and America, in favor of the

application of this rule to suits at law as well as in equity. The first of these propositions was not called for, because the bill alleged fraudulent concealment, and it seems opposed by many decisions. The second of them seems to me equally unnecessary to the decision of the case, because the bill was based on the fraud of which the fraudulent concealment was part. The statutory bar ran, as to that cause of action, from the time the fraudulent act was committed. An action at law, based on the fraud, might be subjected to the same rule, and this was doubtless the meaning of the opinion on this subject. But such a rule must be inapplicable to an action founded on a contract, and in respect to which, the fraudulent concealment of the cause of action is relied on simply to avoid the bar of the statute.

In the Connecticut cases cited by counsel, the court expressly avoid determining the question here involved. *Phalen v. Clark*, 19 *Conn.* 421; *Bank of Hartford County* v. *Waterman*, 26 *Conn.* 324.

The remaining case to be considered is that of *Sherwood* v. *Sutton*, 5 *Mason* 149. It was decided by Judge Story, and bears the impress of his keen and equitable mind. He distinctly holds that, in New Hampshire, in an action on the case for deceit, a replication of a fraudulent concealment of the cause of action is a good answer to the plea of the statute of limitations. But it is impossible to examine this opinion without concluding that the learned judge, in dealing with this question, was administering an equitable remedy in a court of law. He states that the fact that there is no state court in New Hampshire possessed of general equity powers, so that "the remedy, if administered at all, must be administered in such cases, through the instrumentality of a court of law," is a consideration, in forming his opinion, of no inconsiderable weight. After examining the English decisions (the Exchequer cases above cited were not then decided) and the decisions in Pennsylvania, Massachusetts and Maine, and contrasting them with Troup v. Smith, hereafter cited, he uses the following language: "In this conflict of American deci-

sions, it is the duty of the court to adopt that which seems built on the better reason, or at least which, upon an equipoise, seems most consonant with public convenience and justice. I put the case in this way because I am not called on to discuss the point as if it was an original one of first impression, unaffected by judicial intimation or opinion. I desire to be understood as utterly disclaiming any intention of expressing what, under such circumstances, my opinion would be. The case is affected by judicial decision, and the choice is fairly given to follow that which is most consonant to the local jurisprudence of New Hampshire."

These are the cases relied on to sustain plaintiff's contention. They include all I have been able to find giving countenance to that view. Some of them are, obviously, mere expressions of opinion. The last cited is avowedly based upon the peculiarity of the local jurisprudence of New Hampshire. The others emanate from courts accustomed to administer both legal and equitable remedies. The tendency, under such circumstances, to assimilate these remedies, which, under our system, are kept so distinct, and the temptation to administer relief in a proper case, regardless of the formal distinction between such remedies, may fairly be considered to much affect the weight of such authorities.

When we turn to other states, we find many well-considered cases maintaining a view adverse to the claim of plaintiff.

The leading case is that of *Troup* v. *Smith*, 20 *Johns.* 33. It was an action of *assumpsit*. A plea of the statute of limitations was met by a replication alleging a fraudulent concealment of the cause of action until within six years. The precise point was therefore directly presented. Chief Justice Spencer, in delivering the opinion of the court, adverse to the replication, puts himself upon the ground that the statute is obligatory on courts of law, and cannot be dispensed with for any cause, even for fraud. He treats the case of Bree *v.* Holbech as expressing a mere *dictum* of Lord Mansfield. In commenting on the decisions of Massachusetts and Pennsylvania, he says: " We cannot yield the convictions of our own

minds to decisions evidently borrowed from the courts of
equity, and which have never been sanctioned in the courts
of law in that country from which our jurisprudence is de-
rived."

This decision has been followed in New York, in *Leonard*
v. *Pitney*, 5 *Wend.* 30; *Allen* v. *Mille*, 17 *Wend.* 202, and
*Humbert* v. *Trinity Ch.*, 24 *Wend.* 587.

In *Miles* v. *Berry*, 1 *Hill* (*S. C.*) 296, a similar point was
presented. The court say: "Unless the discovery of the
fraud can be regarded as the plaintiff's cause of action, it can-
not have the effect of preventing the operation of the statute
of limitations. For, to allow it to have that effect in any
other point of view, would be to make and allow, by judicial
construction, an exception to the statute which the legislature
did not think proper to make."

Without further extending this opinion, I will simply indi-
cate the other cases found, holding the same view: *Fee's Adm'r*
v. *Fee*, 10 *Ohio* 469; *Buckner* v. *Calcote*, 28 *Miss.* 432; *Dozier*
v. *Ellis*, 28 *Miss.* 730; *Edwards* v. *Gibbs*, 39 *Miss.* 166;
*Callis* v. *Waddy*, 2 *Munf.* 511; *Clarke* v. *Reeder*, 1 *Spears* (*S.
C.*) 398; *Smith* v. *Bishop*, 9 *Vt.* 110; *Pyle* v. *Beckwith*, 1 *J.
J. Marsh.* 445.

The point in question seems never to have been directly
presented in New Jersey. In the case of *Ely* v. *Norton*, 1
*Halst.* 187, eminent counsel, in citing Bree *v.* Holbech, ex-
press the opinion that Lord Mansfield had gone too far in
declaring that fraud would relieve, at law, from the bar of the
statute of limitations. In *Todd* v. *Rafferty*, 3 *Stew. Eq.* 254,
Vice Chancellor Van Fleet, in alluding to one of the Massa-
chusetts cases, declares that the doctrine of those cases is
opposed to the general current of judicial opinion. These
seem to be the only expressions of opinion on the subject to
be found in our reports.

Reviewing the whole case, my conclusions are that there is
no necessity to administer the relief plaintiff is entitled to on
the admitted facts, in a court of law, but that such relief can
be adequately and much more appropriately administered in a

court of equity; that no logical basis can be found for such a replication, and no legal ground for such an evasion of the statute of limitations by a court of law; and that, while the authorities are doubtless conflicting, the decided weight of authority is opposed to maintaining this replication as good at law.

The demurrer should therefore be sustained, and the Circuit Court should be so advised.