# Appeal of Sophia and Hannah E. Marsden.
# Appeal of William C. Marsden.

By his will, A. left two farms to his son and executor B.; his household furniture to his wife, C. absolutely, and the residue of his estate to her for life. At the appraisement, six coupon bonds of $1,000 each, found among the securities, were claimed by the widow as a gift from A. in his lifetime, and were not included in the inventory, although the executor demanded them from time to time, as belonging to the estate. Several months after the appraisement, the widow produced what she claimed to be a later will of the decedent, in which his estate, excepting the two farms, was left to her absolutely, and she was sole executrix. A. thereupon surrendered his letters testamentary, and others were granted to the widow, who acted as executrix under them for over six years. The latter will having, afterwards, been found to be a forgery, B. was reinstated as executor under the valid will. Upon resuming his executorship, B. found that C., while acting as executrix, had converted the six bonds into certain shares of stock, which were held in the name of D., a daughter of A. and C.; and B. thereupon filed a bill in equity against D. and C., setting up the ownership of the bonds by the decedent, and praying that the respondents be ordered to transfer the stock—the proceeds thereof—to him, the executor, and to account for said proceeds with dividends and options obtained thereon:

*Held*, 1. That under the evidence, the bonds were the property of the decedent's estate.

2. That as B. was ousted from his office of executor, by means of a fraudulent will, C. and D., who made use of said will to deprive him of his rights for a period of more than six years, could not successfully interpose the statute of limitations as a bar to his bill, to recover property of the estate.

3. That C. and D. must surrender up the certificates of stock obtained by the sale of the bonds, and have them transferred to the executor on the books of the company.

4. That as there appeared to be no debts of the decedent's estate, it was not necessary for C. to account to the executor for the dividends and options, obtained upon said shares of stock, as she was, under the will, entitled thereto and claimed to have made a gift thereof to D.

January 24th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia county:* In equity: Of July Term 1882, No. 217.

Appeal of Sophia Marsden, widow, and Hannah E. Marsden, daughter, of John Marsden, deceased, from a final decree of said court, determining the ownership of certain shares of stock, formerly the property of the decedent.

Appeal of William C. Marsden, executor of said John Marsden, deceased, from a portion of the same decree, determining the disposition of the income from said bonds, and their proceeds.

The following were the material facts: John Marsden, the

testator, died June 13th 1874, leaving a widow Sophia, a daughter Hannah E., and a son William C. Marsden. By his will, dated May 29th 1866, and duly proved, the testator left two small farms to his son, his household furniture to his wife Sophia, and all the rest and residue of his estate to her for life.

William C. Marsden was executor under the will, and took out letters June 19th 1874. At the appraisement of the estate, six $1,000 coupon bonds of the North Penn. R. R., which were found among his securities, were claimed by Mrs. Marsden as a gift from her husband in his lifetime, and were not included in the inventory. The executor demanded these from time to time, claiming that they belonged to the estate.

In December 1874, Mrs. Marsden produced what she claimed to be a later will of decedent, dated March 6th 1874, under which she was sole executrix, and the whole estate, excepting the two farms, was left to her absolutely.

William C. Marsden thereupon surrendered his letters on December 29th 1874, and the alleged later will was duly admitted to probate, and letters testamentary granted thereon to Mrs. Marsden.

In 1878, the Orphans' Court awarded an issue to try the validity of the alleged will of 1874, and on June 1st 1881, the jury found it to be a forgery, whereupon the letters to Mrs. Marsden were revoked, and William C. Marsden was reinstated as executor under the will of May 29th 1866. Upon resuming his duties as executor, William C. Marsden found that the North Penn. R. R. bonds, which had not been included in Mrs. Marsden's account as executrix, had been sold, and the proceeds invested in one hundred and twenty shares of Pennsylvania R. R. stock which were in the name of Hannah E. Marsden. On June 28th 1881, the executor filed a bill in equity against Sophia and Hannah E. Marsden, setting out the ownership of the North Penn. R. R. bonds in the decedent, and praying that the respondents be ordered to transfer the proceeds thereof to the executor, and to account for said proceeds with interest, dividends, and options obtained thereby.

The respondents filed an answer, setting up the ownership of the original bonds in Mrs. Marsden, as a gift from her husband; and also the Statute of Limitations.

The opinion of the court was delivered by BIDDLE, J., who found that the six bonds were the property of John Marsden at his decease; and, further, that William C. Marsden had been fraudulently dispossessed of his office of executor, by Mrs. Marsden, in producing and acting under the alleged will of 1874; and therefore, that the Statute of Limitations will not run in her favor against the executor, who had thus been prevented by her fraud from bringing his suit within six years.

The court accordingly appointed a Master (John W. Patton, Esquire), to report an account of the balance of principal, dividend and options, with which Sophia Marsden and Hannah E. Marsden, or either of them, should be charged ; and also a form of decree.    The Master submitted a report and a form of decree which set forth, that the six bonds of the North Penn. R. R. were the property of John Marsden at his death and belonged to his estate, and directed Hannah E. Marsden to surrender up the certificates for the one hundred and twenty shares of Pennsylvania R. R. stock obtained by the sale of said bonds, and have them transferred to the executor on the books of the co rpany ; and further, that Hannah and Sophia Marsden should account for the options and dividends obtained from the said one hundred and twenty shares of stock, since January 28th 1881, and pay the said dividends to the executor with interest from the date of the Master's report.

Exceptions were filed to this report, the first of which was as follows ; That the Master "erred in stating an account of income on the one hundred and twenty shares of stock.    If the same are the estate of the decedent, there being no creditors, said income is the absolute property of said Sophia Marsden."

The court entered a final decree sustaining the first exception as above, but otherwise in accordance with the decree reported by the Master.    Whereupon Sophia and Hannah E. Marsden took an appeal, assigning for error the decree of the court and the finding of fact that they, or either of them, had been guilty of fraud, thus preventing the running of the Statute of Limitations.

William C. Marsden also appealed from that portion of the decree sustaining the first exception to the Master's report as above, and refusing to charge the defendants with dividends and interest, as reported by the Master.

*John Shallcross* and *David W. Sellers,* for Sophia and Hannah E. Marsden, appellants.—The Statute of Limitations is as applicable in equity as in law, when pleaded : Hamilton *v.* Id., 6 Harris 20 ; Irwin *v.* Cooper, 11 Norris 304 ; Marsteller *v.* Id., 12 Norris 350.    When the statute once commences to run, it does not stop for any supervening cause : Smith's Ex'r *v.* Hill, 1 Wilson 134 ; Duroure *v.* Jones, 4 T. R. 300 ; Lynch *v.* Cox, 11 Harris 270 ; Maus *v.* Maus, 30 Sm. 194 ; Hudson *v.* Carey, 11 S. & R. 11 ; Owen *v.* Saving Fund, 1 Out. 47.

*Jos. De F. Junkin* and *George Junkin,* for Wm. C. Marsden, appellant.—The Orphans' Court alone has jurisdiction to distribute a decedent's estate, and to decide upon the right of a

legatee to a distributive share thereof, or upon the effect of a waiver of such a share: Hammett's Appeal, 2 Norris 394; Loomis *v.* Loomis, 3 Casey 233. Until all the assets of an estate are accounted for by an executor, and a final decree of distribution entered by the Orphans' Court, no indefeasible title to either income or principal exists in the legatees, for creditors may exist who will sweep both away. Because no creditors had appeared before the court below, it does not necessarily follow that none will appear. By the opinion of the court below in this case, the retention of this property by the defendants, was fraudulent in fact, and, therefore, as joint tort feasors, they must be compelled to account in toto, for everything of which they have been depriving the estate through the fraud upon its legal custodian.

*Jos. De F. Junkin* and *George Junkin,* for appellee.—It has always been held, even at law, that the bar of the statute may be avoided by proof of fraud in the defendant which has prevented the plaintiff from asserting his right until a period beyond the time limited by the statute. In equity, in cases of fraud or mistake, the statute will begin to run from the time of the discovery of such fraud or mistake, and not before: Story's Eq. § 1521 a, Note 2 ; Brooksbank *v.* Smith, 2 Y. & C. 58 ; McDowell *v.* Young, 12 S. & R. 115 ; Ferris *v.* Henderson, 2 Jones 49 ; Riddle *v.* Murphy, 7 S. & R. 235.

Mr. Justice GREEN delivered the opinions of the court, March 5th 1883.

SOPHIA AND HANNAH E. MARSDEN'S APPEAL.

The learned judge of the court below found, and as we think, upon sufficient testimony, that the $6,000 of North Pennsylvania Railroad Co. coupon bonds were the property of John Marsden, deceased, at the time of his death, and were not the property of his widow. While she and her daughter assert an ownership in her, in their answers to the bill, no proof of the actual acquisition of such ownership by purchase, or otherwise than by gift of the husband, was offered. The evidence of gift consisted solely of the assertion of the widow, and a statement by the daughter to the effect that she had heard her father say they were her mother's. But the other testimony in the case, as described in the opinion of the court below, clearly proved that both the mother and the daughter, after John Marsden's death treated the bonds as the property of the estate and negotiated in relation to them as such. The statement the daughter made in the letter of December 13th 1874, that her father had money invested in railroad stock, among which was a coupon bond of $6,000, and that as her mother had nothing she could call her

own she reserved the coupon bond for herself, is altogether inconsistent with her answer, and is in entire accord with the other testimony tending to show that her father was the real owner. It is not necessary to review the testimony in detail. We are satisfied with the finding of this fact of ownership as declared by the court below.

As to the plea of the statute of limitations, it was not necessary for the plaintiff to anticipate in his bill that the statute would be pleaded and to make averments by way of reply to it. When it was set up as a defence he could reply to it by testimony showing it could not prevail. It is true there is no averment in the bill that the defendants or either of them forged the alleged will of May 6th 1874, but it was proved that the will was a spurious paper, never executed by John Marsden, and that this was determined by the verdict of a jury in an issue framed to try the question. As against the plaintiff this was undoubtedly a fraudulent will. The widow who was named as executrix in it took out letters, and acted under it, from December 1874 till June 1881. The daughter testified on the trial that it was in her father's handwriting. In a letter she wrote to the plaintiff her brother in December 1874, she said it was found accidently between the leaves of a Concordance. Both the mother and the daughter upheld the paper as a genuine will for more than six years and resisted the efforts made to have its validity tried. By means of it they induced the plaintiff to abandon the genuine will of 1866, to surrender his letters testamentary granted upon that will, and to give up his rights under it. Whether the mother and daughter were personally conscious of the forgery of the spurious will or not, they asserted it after its genuineness was disputed and they were apprised of its fraudulent character, and are justly chargeable with every inference of consciousness which such circumstances naturally and fairly imply. But independently of that, the fact remains that the plaintiff was ousted of his office as executor, and of his rights under the true will, by means of the false and fraudulent will, upheld and asserted against him by the only persons who received any benefits under the latter instrument. It was a fraud and it was employed by the defendants to deprive the plaintiff of his rights. In such circumstances can they successfully interpose the plea of the statute of limitations in furtherance of the fraud? We think not. This is not a common law action but a proceeding in equity. While equity will follow the law in administering statutes of repose, it will also take care that such statutes are not used as instruments in the perpetration of frauds. On the contrary, it will prevent such results by refusing to apply the bar of the statute where justice requires it. In Story's Equity, § 1521, the doctrine is thus stated.

" Courts of equity not only act in obedience, and in analogy, to the statute of limitations, in proper cases; but they also interfere in many cases to prevent the bar of the statute, where it would be inequitable or unjust. Thus, for example, if a party has perpetrated a fraud which has not been discovered until the statutable bar may apply to it at law, courts of equity will interpose, and remove the bar out of the way of the other injured party. A fortiori, they will not allow such a bar to prevail, by mere analogy, to suits in equity, when it would be in furtherance of a manifest injustice." Many cases are cited in the notes in support of the doctrine, and it has been adopted and followed by this court. It was applied in Harrisburg Bank *v.* Forster, 8 Watts 12, to the cashier of a bank who pleaded the statute against his own notes to the bank. That was a suit upon four notes which were more than six years' old and subject to the bar of the statute. ROGERS, J., on p. 16, said " The statutes of limitations, which are statutes of repose, are certainly very beneficial, and of the highest importance. They are passed to assure titles to land, to quiet possession, to guard against perjuries, and more especially to prevent the commission of fraud and injustice. To prevent that, which was intended to guard the citizen against fraud and injustice being made an instrument or a shield to fraud, the court has found it absolutely necessary to introduce exceptions to the operation of the statute, and one to which the circumstances of this case more particularly apply, is where there has been fraud or concealment, on the part of the party seeking the protection of the statute, and especially when that party stands in a fiduciary relation."

The foregoing doctrine is of course applicable to one who has himself committed the fraud which is sought to be protected by the statute. We think it is also applicable to one who makes use of a fraudulent transaction for his own purposes, and then asks the protection of the statute of limitations to shield himself from the consequences of the fraud. Such protection would be equally harmful to the victim of the fraud in either case, and would equally tend to the perversion of justice ; nor is it easy to perceive any serious difference of culpability between the perpetrator of a fraud and one who consciously makes use of a fraud committed by another. However it may be at law, it is very certain that equity is not bound to permit the statute of limitations to be used as a shield or protection to fraud, and is at liberty to deny its application in order to prevent manifest injustice.

There is a grave question, which we do not decide, whether the statute would run in any event during the continuance of the executorship of Sophia Marsden. The apparent ownership of the cause of action was in her under the false will, and as

she was sole executrix from December 1874 to June 1881, and could not sue herself, it would seem that the right of action was practically extinguished during that period. The case differs in this respect from the cases in which a right of action has accrued to one who has subsequently gone beyond the seas or become subject to a disability. In those cases there is a party clothed with a right of action, and the courts are open. It is unnecessary, however, to determine this matter as the considerations before stated dispose of the case.

> Decree affirmed and appeal dismissed at the costs of the appellants.

### WILLIAM C. MARSDEN'S APPEAL.

John Marsden, the testator, died on June 13th 1874. He left an estate amounting in value to $65,000 or $70,000 exclusive of two small farms in Sullivan county. By his will dated May 29th 1866, after devising the two farms to the appellant, his son, he gave the household goods to his wife, Sophia Marsden, all the rest of his estate to her for life. The appellant was appointed executor and took out letters testamentary on June 19th 1874, which were revoked in December 1874, upon the discovery of what was supposed to be a genuine will of a later date. This paper was subsequently, in 1881, determined to be a forgery, and thereupon the probate of the original will, and the letters granted thereon, were re-instated. Sophia Marsden, the widow, who was named as sole executrix in the second alleged will, had taken out letters under it and acted as executrix from December 1874 to June 1881. Both the appellant and Mrs. Marsden had filed accounts which were adjudicated. The present bill in equity was filed on June 28th 1881, to compel a surrender of certain shares of stock which were purchased with the proceeds of $6,000 of North Penna. R. R. Co. bonds, the property of John Marsden, deceased, but claimed by the widow as hers. After a hearing upon bill, answer and proofs, a decree was made finding that the $6,000 of bonds were the property of the deceased, and that one hundred and twenty shares of Pennsylvania R. R. stock had been purchased with the proceeds of the bonds, and directing a surrender of the stock. The Master also reported an account of the income of the bonds and stock and recommended a decree that the income thus received amounting to about $3,000 be paid to the appellant as executor. An exception being filed to this finding the same was sustained by the court, and from that decision the present appeal was taken. We think there was no error in this action of the court. By the will of the deceased, John Marsden, the whole of the residue of his estate was given to the widow during her life. The bill did not aver, nor was

there evidence to show, that any part of the income in question was needed for the payment of debts, and the estate was quite large.   The testator had been dead seven years when the bill was filed, and nearly eight years when the decree was made. Two executor's accounts had been filed and adjudicated.   The presumption was that no part of the income in question was needed for the payment of debts, and there was no proof to the contrary.   If this income were awarded to the appellant he would be obliged to pay it forthwith to the widow.   But the widow renounced all claim to an account of it as it was in the hands of her daughter, Hannah E. Marsden.   We see no good purpose to be subserved by compelling the payment of this money by the daughter.   The Master reports that under the decree of distribution made by the Orphans' Court, Sophia Marsden, the widow, has entered security for the custody of the personal estate of the decedent.   The decree of the Orphans' Court is not printed, nor a copy of the will.   But it is stated in the paper book that the residuary estate was devised directly to the widow for her life.   If this is so and she has given security as tenant for life of the personal estate, we do not see that the executor has anything to do with it, either with the custody of it or the collection of the income.   We assume that the Orphans' Court has exercised its jurisdiction so far as to adjudicate upon the right of the widow to the estate of her husband.   The circumstance that the North Penna. bonds, or the Penna. R. R. stock were not included in the account adjudicated, would not affect her right, at least to the income derived from the latter, which is all that is in question here.   It belongs to her by the same title that gives her the rest of the residuary estate.   If she choose to give it to her daughter she has a right to do so, and there is no reason why the latter should pay it to the executor.

Decree affirmed, and appeal dismissed at the costs of the appellant.