JEAN FERNANDI AND FRANK FERNANDI, HER HUS-
BAND, PLAINTIFFS-APPELLANTS, v. VINCENT L.
STRULLY, M.D., CARL L. MAZZARELLA, M.D., AND
R. A. PRINCE, M.D., DEFENDANTS-RESPONDENTS, AND
VINCENT L. STRULLY, M.D. AND R. A. PRINCE, M.D.,
THIRD-PARTY PLAINTIFFS, v. ST. JOSEPH'S HOS-
PITAL, A CORPORATION, THIRD-PARTY DEFENDANT.

Argued March 7, 1961—Decided June 30, 1961.

*Mr. Bruno L. Leopizzi* argued the cause for the appellants (*Mr. Robert P. Alliegro,* on the brief).

*Mr. John J. McLaughlin* argued the cause for the respondents Dr. Strully and Dr. Prince (*Messrs. Shanley & Fisher,* attorneys; *Mr. Frederick B. Lacey,* of counsel).

*Mr. Adolph A. Romei* argued the cause for the respondent Dr. Mazzarella (*Messrs. Preziosi and Romei,* attorneys).

The opinion of the court was delivered by

JACOBS, J.  The Law Division granted the motion by the defendants for summary judgment on the ground that the claim by the plaintiffs was barred by the statute of limitations.  The plaintiffs appealed from the ensuing judgment and we certified the appeal on our own motion while it was pending in the Appellate Division.

In 1954 Mrs. Fernandi was told by her family physician Dr. Mazzarella that she needed an operation and that he would send her to Dr. Strully, a surgeon with offices in Paterson.  Thereafter Dr. Strully examined her and on April 26, 1955, assisted by Dr. Mazzarella and Dr. Prince, he performed a total hysterectomy upon her at St. Joseph's Hospital, Paterson.  Mrs. Fernandi was discharged from the Hospital on May 5, 1955 and received postoperative attention from Dr. Strully.  Her last visit to Dr. Strully in that year was on November 14, 1955; she did not see him again until September 1958 although in the intervening period she made many visits to Dr. Mazzarella.  During these visits she complained that her back was troubling her and received medication and heat treatments.  In August 1958 she discussed with Dr. Mazzarella the desirability of having x-rays

of her back.  Dr. Mazzarella sent her to Dr. Santoro who took x-rays and told her that in her abdomen there was a foreign object which looked like a wing nut.  She showed the x-rays first to Dr. Mazzarella and then to Dr. Strully who examined and told her, according to her deposition, that she had "that wing nut that was missing" but that he did not want her to worry about it because "it is steel and it is sterile."  Dr. Strully's deposition indicated that he had been told by someone at St. Joseph's Hospital that a wing nut on a retractor used during the course of the operation on Mrs. Fernandi had been missing.  On February 16, 1959 Dr. Strully obtained Mrs. Fernandi's signature to a document in the doctor's handwriting which read as follows: "This is to certify that Dr. Strully has told me of the wing nut in my pelvis."

On August 13, 1959, Mrs. Fernandi and her husband filed a complaint in the Law Division naming Doctors Strully, Mazzarella and Prince as defendants.  In the first count of the complaint Mrs. Fernandi alleged that she employed Dr. Strully to perform a total hysterectomy on her and that Doctors Mazzarella and Prince were retained to assist him; that in the course of the operation the doctors negligently and carelessly left a wing nut in her body as a result of which she has suffered and will suffer great pain and anguish; and she sought damages for her injuries resulting from the negligence of the doctors. In another count of the complaint she alleged that the doctors had "fraudulently and deceitfully concealed their negligence" and that as a result she was lulled "into a sense of security so as to permit her to allow the time permitted by the Statute of Limitations to elapse."  In still another count of the complaint she alleged that in her treatment after the operation the doctors had "failed to exercise reasonable and ordinary care" in that "they did not take x-rays to determine the cause of her complaints relative to her back."  Answers to the complaint were filed by the doctors and in addition Doctors Strully and Prince filed a cross-claim against Dr. Maz-

zarella and a third-party complaint against St. Joseph's Hospital. The Hospital filed an answer and cross-claim and thereafter the attorneys for the three doctors served notice that they would move for summary judgment on the ground that the statute of limitations had barred the claim of the plaintiffs.

On July 1, 1960 Assignment Judge Kolovsky, sitting in the Law Division, rendered his opinion in which he stated that he had considered the affidavits and depositions submitted to him, as well as the briefs and argument of counsel; that he did not believe there was much doubt about the presence of a foreign body in Mrs. Fernandi's abdomen and that it could be considered as established, for purposes of the motion, that the "foreign body is a wing nut which came from a retractor that was used in the operation"; that more than two years had elapsed between the date of the operation and the institution of the plaintiffs' action; and that while he inclined, on principle, towards a contrary view he considered himself bound to hold under *Weinstein v. Blanchard,* 109 *N. J. L.* 332 (*E. & A.* 1932) and *Tortorello v. Reinfeld,* 6 *N. J.* 58 (1950), that the plaintiffs' action, grounded on the charge that the doctors were negligent and careless in the course of the operation, was barred by the statute of limitations. He found no evidence to support the charge of fraudulent concealment of the negligence and expressed uncertainty as to whether the plaintiffs' pleading was intended to allege that Doctors Strully and Mazzarella were guilty of independent negligent acts or omissions during the two-year period before the institution of the action. He concluded that the motion for summary judgment should be granted, reserving to the plaintiffs the right "to file an amendment relating to acts of negligence within two years prior to August 13, 1959, when the complaint was filed." The ensuing judgment dismissed the complaint, along with the cross-claims and third-party complaint, and thereafter the plaintiffs duly filed notice of appeal from the dismissal of their action against the doctors. At the oral argument,

counsel for the plaintiffs acknowledged that there was insufficient evidence to establish the charge of fraudulent concealment but urged that, under the circumstances, the plaintiffs' negligence action may not justly be deemed to have been barred by the statute of limitations. No question has been raised as to the present appealability of the Law Division's judgment (*cf. R. R.* 4:55–2) nor has any question been raised as to the status of the cross-claims and third-party complaint although it would seem clear that, if the plaintiffs' action against the doctors is here held not to be barred by the statute of limitations, leave should be granted in the Law Division for reinstatement of the cross claims and third-party complaint.

In *Wood v. Carpenter,* 101 *U. S.* 135, 139, 25 *L. Ed.* 807, 808 (1879), Justice Swayne noted that limitation statutes embody important public policy considerations in that "they stimulate to activity and punish negligence" and "promote repose by giving security and stability to human affairs." See *Board of Trade v. Cayzer, Irvine & Co.,* [1927] *A. C.* 610, 628; *cf. Chase Securities Corp. v. Donaldson,* 325 *U. S.* 304, 314, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628, 1635 (1945); *Public Schools v. Walker,* 9 *Wall.* 282, 19 *L. Ed.* 576, 578 (1870). When a plaintiff knows or has reason to know that he has a cause of action and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. Where, however, the plaintiff does not know or have any reason to know that he has a cause of action until after the period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play. In some states the legislatures have endeavored to deal directly with the issue. See *Mo. Rev. Stat. Ann.* § 1012 (1939) cited in *Thatcher v. De Tar,* 351 *Mo.* 603, 173 *S. W. 2d* 760 (*Sup. Ct.* 1943) and *Act 58 of 1945, Ark. Stats.* §§ 37–205 cited in *Crossett Health Center v. Croswell,* 221

*Ark.* 874, 256 *S. W. 2d* 548 (*Sup. Ct.* 1953). In most of the states, as in New Jersey, the legislatures have not at all expressed themselves on the matter, preferring to leave to judicial interpretation and application the rather obscure statutory phraseology that the plaintiff's proceeding shall be instituted within a stated period after his cause of action "shall have accrued." See *N. J. S.* 2A:14–1 *et seq.; cf.* Note, "Developments in the Law, Statutes of Limitations," 63 *Harv. L. Rev.* 1177, 1203–1205 (1950).

→ | Most courts, including those in New Jersey, have taken the position that where a plaintiff suffers damage as the result of the defendant's wrong he may be barred though he does not, during the customary period of limitations, know or have any reason to believe that he has a cause of action. See *Sullivan v. Stout,* 120 *N. J. L.* 304 (*E. & A.* 1938); *Gogolin v. Williams,* 91 *N. J. L.* 266 (*E. & A.* 1917); *Martucci v. Koppers Co.,* 58 *F. Supp.* 707 (*D. C. N. J.* 1945). In reaching this result the courts have evidently considered that the obvious injustice to the plaintiff is outweighed by broader policy considerations favoring the defendant; in *Tortorello v. Reinfeld, supra,* 6 *N. J.* 58, the court, in holding that an action against a plastic surgeon who allegedly disfigured the plaintiff, was barred by the two-year period of limitations (calculated from the date of the wrong and injury rather than from the date of the last professional treatment or the date of knowledge of the cause of action), quoted approvingly from an Illinois case where the court remarked that " 'while hardships may arise in particular cases by reason of this ruling, a contrary ruling would be inimical to the repose of society and promote litigation of a character too uncertain and too speculative to be encouraged.' " 6 *N. J.,* at *p.* 67.

Notwithstanding the foregoing, there have been many instances in which courts, in our State as well as elsewhere, have found the particular circumstances and the considerations of individual justice to be sufficiently compelling to dictate a less harsh approach. In *Hughes v. Eureka Flint,*

*&c., Inc.,* 20 *N. J. Misc.* 314 *(Mercer County Cir. Ct.* 1939), the plaintiff in 1938 instituted a common law negligence action in which he alleged that he was employed by the defendant from 1920 to 1938 and that because of the neglect of the defendant he had contracted silicosis from continued inhalation of dust particles. The defendant contended that even though the plaintiff may have theretofore been wholly unaware of his condition or its cause he was barred by the two-year limitation from asserting any claim with respect to negligence prior to 1936. This contention was rejected by Justice (then Circuit Court Judge) Oliphant who pointed out that New Jersey's statute of limitations does not define the accrual of a cause of action; that "within the limits of the statute an interpretation of the phrase 'cause of action' should be reached which is in favor of the injured party and against the wrongdoer"; and that while it would impose some hardship on the defendant to permit the plaintiff to prove acts of negligence over the period of many years, it would be "even more undesirable and unjust" to bar such proof by the plaintiff. The Justice concluded that the defendant's wrong should be treated as "single and continuous," that no other rule would constitute "substantial justice," and that the statute of limitations should be viewed as beginning "to run from the last date of employment." See 20 *N. J. Misc.,* at *p.* 316; *cf. Biglioli v. Durotest Corp.,* 44 *N. J. Super.* 93, 102 *(App. Div.* 1957), affirmed 26 *N. J.* 33, 44 (1958).

In *Urie v. Thompson,* 337 *U. S.* 163, 69 *S. Ct.* 1018, 93 *L. Ed.* 1282 (1949), the plaintiff Urie was employed by the defendant for 30 years and, having contracted silicosis, was forced to cease work in 1940. On November 25, 1941 he instituted a proceeding under the Federal Employers' Liability Act which provides that no action thereunder shall be maintained unless commenced within three years "from the day the cause of action accrued." See 45 *U. S. C. A.* § 56. The defendant contended that the plaintiff had undoubtedly, though unwittingly, contracted silicosis long before

1938 and was therefore barred by the three-year period of limitations; in the alternative there was a suggested contention that each inhalation of silica dust was a separate tort giving rise to a fresh cause of action and that the plaintiff was therefore limited to a claim for inhalations within the three-year period immediately prior to the institution of his action. In rejecting these contentions Justice Rutledge, speaking for the Supreme Court, had this to say:

"If Urie were held barred from prosecuting this action because he must be said, as a matter of law, to have contracted silicosis prior to November 25, 1938, it would be clear that the federal legislation afforded Urie only a delusive remedy. It would mean that at some past moment in time, unknown and inherently unknowable even in retrospect, Urie was charged with knowledge of the slow and tragic disintegration of his lungs; under this view Urie's failure to diagnose within the applicable statute of limitations a disease whose symptoms had not yet obtruded on his consciousness would constitute waiver of his right to compensation at the ultimate day of discovery and disability.  *  *  *

We do not think the humane legislative plan intended such consequences to attach to blameless ignorance. Nor do we think those consequences can be reconciled with the traditional purposes of statutes of limitations, which conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights." 337 *U. S.*, at *p.* 169–170, 69 *S. Ct.*, at *p.* 1024, 93 *L. Ed.*, at *p.* 1292

The sweep of Justice Rutledge's language raises questions as to earlier decisions which took the position that statutory periods of limitation are generally deemed to run though the plaintiff does not know or have any reason to know that he has a cause of action; but this broader subject with its far-reaching implications need not be pursued here for the foreign object malpractice cases, with which we are particularly concerned, present special considerations which may fairly be said to set them apart. They involve the confidential doctor-patient relationship, the negligent failure to remove a foreign object during the course of the doctor's operation on his patient, the patient's total ignorance during the customary period of limitations of that fact or of cir-

cumstances suggesting it, the later discovery of the foreign object and the material harm it had done and the patient's expeditious institution of legal action thereafter. These circumstances eliminate the danger of a belated false or frivolous claim. Departing from the ordinary rule in this special type of situation so as to permit the patient to maintain his legal action after he knows or has reason to know of the existence of his claim would avoid flagrant injustice to him without unduly impairing repose or promoting litigation of the character referred to in *Tortorello* as " 'too uncertain and too speculative to be encouraged.' " See 6 *N. J.*, at *p.* 67; Note, "The Statute of Limitations in Actions for Undiscovered Malpractice," 12 *Wyo. L. J.* 30, 36 (1957); Note, "Malpractice and the Statute of Limitations," 32 *Ind. L. J.* 528, 533, 534 (1957); *cf.* Anderson, "The Application of Statutes of Limitation to Actions Against Physicians and Surgeons," 25 *Ins. Counsel J.* 237 (1958); Comment, "Statute of Limitations in an Action of Malpractice," 64 *Dick. L. Rev.* 173 (1960); Annot., "When statute of limitations commences to run against actions against physicians, surgeons, or dentists for malpractice," 144 *A. L. R.* 209 (1943).

In *Weinstein v. Blanchard, supra,* 109 *N. J. L.* 332, two drainage tubes were placed in the plaintiff's side by the defendant-doctor during an operation. One was removed and the other disappeared. The plaintiff's mother, who assisted in dressing the plaintiff's wound, inquired whether the tube could have slipped into the wound but the defendant told her that it had not, and, if it had, it would dissolve. Years later the plaintiff became ill and x-rays disclosed a tube in his lung which was removed by another doctor. The plaintiff's action was instituted shortly thereafter but the Court of Errors and Appeals held that it was barred by the statute of limitations. In the course of its opinion it noted that "by the accrual of the cause of action is to be understood the right to institute and maintain a suit" (109 *N. J. L.*, at *p.* 336) and it took the position that although

he may then know nothing at all about it, a plaintiff has the right to institute and maintain a suit as soon as his wound is closed with a foreign object in it. See 109 *N. J. L.,* at *p.* 338. The court did not discuss the conflicting policy considerations nor did it deal with the issue of whether and under what circumstances it may fairly be said that the rather obscure legislative terminology is intended to preclude a plaintiff from maintaining an action before he knows or has any reason to know that he has a cause of action. It is significant to us that in malpractice actions, particularly where, as here, they involve foreign objects, an ever increasing number of jurisdictions have used one just legal approach or other to avoid the truly harsh result reached in *Weinstein.* See *Ayers v. Morgan,* 397 *Pa.* 282, 154 *A. 2d* 788 *(Sup. Ct.* 1959); *Crossett Health Center v. Croswell, supra,* 221 *Ark.* 874, 256 *S. W. 2d* 548; *Bowers v. Olch,* 120 *Cal. App. 2d* 108, 260 *P. 2d* 997 *(D. Ct. App.* 1953); *Adams v. Ison,* 249 *S. W. 2d* 791 *(Ky. Ct. App.* 1952); *Morrison v. Acton,* 68 *Ariz.* 27, 198 *P. 2d* 590, 595 *(Sup. Ct.* 1948); *Rosane v. Senger,* 112 *Colo.* 363, 149 *P. 2d* 372 *(Sup. Ct.* 1944); *Thatcher v. De Tar, supra,* 351 *Mo.* 603, 173 *S. W. 2d* 760; *Ehlen v. Burrows,* 51 *Cal. App. 2d* 141, 124 *P. 2d* 82 *(D. Ct. App.* 1942); *Hotelling v. Walther,* 169 *Or.* 559, 130 *P. 2d* 944, 144 *A. L. R.* 205 *(Sup. Ct.* 1942); *Huysman v. Kirsch,* 6 *Cal. 2d* 302, 57 *P. 2d* 908 *(Sup. Ct.* 1936); *Burton v. Tribble,* 189 *Ark.* 58, 70 *S. W. 2d* 503 *(Sup. Ct.* 1934); *Perrin v. Rodriguez,* 153 *So.* 555 *(La. Ct. App.* 1934); *Bowers v. Santee,* 99 *Ohio St.* 361, 124 *N. E.* 238 *(Sup. Ct.* 1919); *Gillette v. Tucker,* 67 *Ohio St.* 106, 65 *N. E.* 865 *(Sup. Ct.* 1902); *cf. City of Miami v. Brooks,* 70 *So. 2d* 306 *(Fla. Sup. Ct.* 1954); *Buck v. Mouradian,* 100 *So. 2d* 70 *(Fla. App. Ct.* 1958); *Sly v. Van Lengen,* 120 *Misc.* 420, 198 *N. Y. S.* 608 *(Sup. Ct.* 1923); Note, *supra,* 63 *Harv. L. Rev.* 1177, at *p.* 1203; Note, *supra,* 12 *Wyo. L. J.,* at *pp.* 36–38; 35 *N. Y. U. L. Rev.* 1561, at *p.* 1563 (1960); 30 *N. Y. U. L. Rev.* 1621, at *p.* 1630 (1955).

In *Huysman v. Kirsch, supra,* 6 *Cal.* 2d 302, 57 *P.* 2d 908, the defendant surgeon closed the plaintiff's wound without removing a drainage tube which had been carelessly left in her abdomen. Although she did not institute her action until after the lapse of a year from the date of the operation, the California Supreme Court unanimously held that she was not barred by the one-year statutory limitation. It suggested the following legal theories in support of its holding: (1) the negligence continued while the tube remained in the plaintiff's body and until its removal and her cause of action "then accrued and would not be barred until one year thereafter," (2) the operation on the plaintiff may be viewed as not complete until "the wound has been closed and all appliances used in the operation have been removed," (3) the statutory period of limitation may be viewed as not beginning to run until the plaintiff knew or should have known of her condition. See 57 *P.* 2d., at *pp.* 912–913. This last approach has been followed in later California cases. See *Bowers v. Olch, supra:*

"If a surgeon performing an operation upon a person leaves a foreign substance in the body, the statute of limitations as to an action against him, based upon alleged malpractice, does not commence to run until the said patient has discovered, or by reasonable diligence should have discovered, that a foreign substance was left in his body. *Pellett v. Sonotone Corp.,* 55 *Cal. App.* 2d 158, 160, 130 *P.* 2d 181; *Costa v. Regents of Univ. of California,* 116 *Cal. App.* 2d 445, 254 *P.* 2d 85; *Huysman v. Kirsch,* 6 *Cal.* 2d 302, 312–313, 57 *P.* 2d 908." 260 *P.* 2d, at *p.* 1002

In *Rosane v. Senger, supra,* 112 *Colo.* 363, 149 *P.* 2d 372, a gauze pad was carelessly left in the plaintiff's abdomen during an operation performed in 1930. Thereafter she suffered pain and was treated by various physicians. In 1940 the pad was discovered and removed. She instituted her action in 1941 and the defendants contended that it was barred by limitations. In rejecting this contention, the Colorado Supreme Court stated that the statute of limitations was enacted "for the purpose of promoting justice,

discouraging unnecessary delay and forestalling the prosecution of stale claims, not for the benefit of the negligent." 149 *P. 2d,* at *p.* 375. Although there was no suggestion that the defendants knew of the failure to remove the pad and intentionally concealed that fact from the plaintiff, the court expressed the view that the matter could fairly be treated in the same fashion as the fraudulent concealment cases where the statute is widely deemed to be tolled. See *Buchanan v. Kull,* 323 *Mich.* 381, 35 *N. W. 2d* 351 (*Sup. Ct.* 1949); *Colvin v. Warren,* 44 *Ga. App.* 825, 163 *S. E.* 268 (*Ct. App.* 1932). In *Burton v. Tribble, supra,* 189 *Ark.* 58, 70 *S. W. 2d* 503, a surgeon carelessly left a ball of gauze in the plaintiff's abdominal cavity and seven years later its presence was discovered and it was removed. In rejecting the contention that the plaintiff's legal action was barred by limitations, the Arkansas Supreme Court took a position comparable to *Rosane v. Senger, supra.* See also *Morrison v. Acton, supra,* 68 *Ariz.* 27, 198 *P. 2d* 590, 595, where the doctor's failure to ascertain and disclose the presence of the foreign object was described as "constructive fraud." See 3 *Pomeroy's Equity Jurisprudence* § 922 (*5th ed.* 1941).

In *Ayers v. Morgan, supra,* 397 *Pa.* 282, 154 *A. 2d* 788, the plaintiff, in 1948, underwent an operation for a marginal jejunal ulcer. He continued to experience pain for several years and finally it was discovered that his discomfort was the result of a sponge which had been negligently left in his abdomen by the defendant-surgeon. The plaintiff instituted legal action against the defendant who contended that the proceeding was barred by the two-year statute of limitations. This contention was rejected by the Pennsylvania Supreme Court which stressed that statutes of limitation, as all statutes, must be read in the light of reason and common sense and that in their application they "must not be made to produce something which the Legislature, as a reasonably-minded body, could never have intended." 154 *A. 2d,* at *p.* 789. See *Urie v. Thompson, supra,* 337 *U. S.* 163, 169, 170, 69 *S. Ct.* 1018, 93 *L. Ed.* 1282, 1292;

*Bayonne Textile Corp. v. American, etc., Silk Workers,* 116 *N. J. Eq.* 146, 151 (*E. & A.* 1934). In the course of its opinion it stated (1) that the operation was "not completed" until the sponge was removed, (2) that the injury to the plaintiff did not become a reality until "the sponge began to break down [the] healthful tissue within the body," and (3) that the defendant's failure to remove the sponge constituted "blameworthiness which continued" until the plaintiff "learned, or, by the exercise of reasonable diligence, could have learned of the presence of the foreign substance within his body." 154 *A. 2d,* at *p.* 793. See *Mitchell v. American Tobacco Company,* 183 *F. Supp.* 406 (*D. C. Pa.* 1960); but *cf. Summers v. Wallace Hospital,* 276 *F. 2d* 831 (*9 Cir.* 1960).

In *Lindquist v. Mullen,* 45 *Wash. 2d* 675, 277 *P. 2d* 724, 728 (1954), the Washington Supreme Court declined to depart from its earlier holdings that the period of limitations runs from the date of the defendant's wrongful act even in a situation where the defendant-surgeon carelessly left a sponge in the wound and the plaintiff brought his legal proceeding as soon as he became aware of his cause of action. A persuasive dissent by Justice Finley, joined by Chief Justice Grady, pointed out that the Washington Legislature had never defined when a cause of action shall be deemed to accrue and that consequently the matter was one of judicial interpretation; that although the view that a patient has an accrued cause of action, though he does not know or suspect it, may meet some tests of "legal logic or theory," it "would hardly meet the tests of abstract, generally applicable, or lay standards of justice"; and that although there were conflicting considerations of policy, the circumstances strongly favored the policy of affording fair and just opportunity to the diligent plaintiff to present his cause of action. With respect to the suggestion that his position would result in widespread litigation, Justice Finley had this to say:

"It may be suggested that a result different from that proposed by the majority would open the floodgates to litigation and in effect negative the statute of limitations in personal injury cases where injuries may actually or allegedly be discovered a number of years after the occurrence of an act of negligence. I do not share this view of alarm over the possible consequences of a result in this case different from that agreed upon by the majority. In the first place, this is a malpractice case. The decision of the court in this matter can and should be limited to such cases. In the second place, the facts are unique—namely, a doctor allowed a surgical sponge to be placed in the body of his patient and to remain there for seven years, examining her and assuring her, during such period, that the incision would heal. The assault, trespass, negligence, or invasion of the patient's right of personality continued for the period of seven years." 277 *P. 2d*, at *p.* 733

In *Gillette v. Tucker, supra,* 67 *Ohio St.* 106, 65 *N. E.* 865, Dr. Gillette performed an appendectomy on Mrs. Tucker and negligently left a sponge in her abdomen. He performed the operation in November 1897 and she continued as his patient for a year thereafter until he dismissed her from his office in November 1898. In April 1899 another doctor removed the sponge and in June 1899 Mrs. Tucker instituted her legal action against Dr. Gillette. The lower court held that she was not barred by the statutory limitation of one year from the date of the accrual of the cause of action and this was sustained by the Ohio Supreme Court. In the course of his opinion, Judge Price took the position that the doctor's duty of care continued so long as the professional relationship with his patient continued; that the injury to Mrs. Tucker consisted "not so much in leaving the sponge within the cavity, as negligently continuing it there, or allowing it to remain there from day to day for about a year, and until he dismissed her from his attentions"; and that "her right of action became complete when the surgeon gave up the case without performing his duty." 65 *N. E.,* at *pp.* 870–871.

In *De Long v. Campbell,* 157 *Ohio St.* 22, 104 *N. E.* 2d 177, 179 (*Sup. Ct.* 1952), a sponge was left in the plaintiff's abdomen during the course of an operation performed by

Dr. Campbell in 1942. In 1948 the sponge was discovered and removed by another doctor and the plaintiff then instituted an action against Dr. Campbell. In holding that the action was barred by limitations the court pointed out that unlike the situation in *Tucker, supra,* there was nothing to indicate that Dr. Campbell treated the plaintiff at any time after the 1942 operation. It cited *Amstutz v. King,* 103 *Ohio St.* 674, 135 *N. E.* 973 (*Sup. Ct.* 1921), where the court, with three judges dissenting, refused to extend the holding in *Tucker* to enable the maintenance of an action which was brought as soon as the foreign object was discovered although more than one year after the doctor-patient relationship had terminated. In his majority opinion, Judge Stewart expressed the thought that the plaintiff's contention that it would be a gross injustice to treat her claim as barred by limitations had "much persuasive force" but he considered that the Ohio Legislature had declared a controlling policy which favored the defendant. In his minority opinion, Judge Middleton dealt with the doctor's wrong as a continuing tort and pointed out that in *Tucker* the court had "found a way to avoid the obviously unreasonable and unjust result of applying the theory that the cause of action accrued at the date of the operation." He noted that the "logic" which in *Tucker* postponed the commission of the tort to the time of severance of the professional relationship would serve equally to "postpone the running of the statute until it is reasonably possible for the victim of the continuous tortious conduct to discover the wrong." And in response to the suggestion that his position might impair the general effectiveness of statutory periods of limitation, he stressed that the court was dealing solely with a case in which the patient could not have known of the presence of the foreign object within him and that a holding in this "peculiar limited class" of cases to the effect that the statute of limitations does not begin to run "until it is reasonably possible for the patient to discover the wrong" need have no effect on any other type of case.

104 *N. E. 2d*, at *p.* 181. See 35 *N. Y. U. L. Rev., supra,* at *p.* 1563; 30 *N. Y. U. L. Rev., supra,* at *p.* 1630.

■ Although New Jersey's Legislature has provided that every action at law for injury to the person shall be brought within two years after the cause of action shall have accrued, it has, as pointed out earlier in this opinion, never sought to define or specify when a cause of action shall be deemed to have accrued within the meaning of the statute, nor has it ever expressed itself as to the effect to be given under the statute (*N. J. S.* 2*A*:14–2) to the fact that the injury was not known to or discoverable by the injured party within the period of two years. *Cf. N. J. S. A.* 34:15–34. The rather obscure nature of the legislative phraseology is amply attested by the frequency of the cases in which courts have been required to pass on when the cause of action may properly be said to have accrued and the many instances in which they have reached disparate results. See *Church of Holy Com'n v. Paterson, etc., R. R. Co.,* 66 *N. J. L.* 218 (*E. & A.* 1901); s. c. 68 *N. J. L.* 399 (*E. & A.* 1902); cf. *Restatement Torts* § 899, comment (e) (1939); 63 *Harv. L. Rev., supra,* at *p.* 1200; 9 *W. Res. L. Rev.* 86, 90 (1957); 49 *Mich. L. Rev.* 937, 950 (1951). In reaching their results they have exercised what has long been recognized as their proper judicial function; as expressed in Mr. Wood's well known treatise, "the question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice." 1 *Wood on Limitations* § 122a, 685, 686 (*4th ed.* 1916). See 63 *Harv. L. Rev., supra,* at *p.* 1200; *cf.* 9 *W. Res. L. Rev., supra,* at *p.* 97.

■ In the absence of legislative definition and specification, the New Jersey courts have often been called upon to delineate the statute; they have conscientiously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices. In some instances they have determined

that the period of limitations may justly be said to begin to run at a fixed date not necessarily related to the earlier date of the wrong and injury. See *Hughes v. Eureka Flint, etc., Inc., supra,* 20 *N. J. Misc.* 314; *cf. Biglioli v. Durolest Corp., supra,* 44 *N. J. Super.* 93, 102, affirmed 26 *N. J.* 33, 44. In many other instances they have invoked their equitable powers to preclude unjust assertions of the bar of limitations. See *Patrick v. Groves,* 115 *N. J. Eq.* 208, 211 (*E. & A.* 1934); *Noel v. Teffeau,* 116 *N. J. Eq.* 446, 448 (*Ch.* 1934); *Howard v. West Jersey, etc., R. R. Co.,* 102 *N. J. Eq.* 517, 520 (*Ch.* 1928); *cf. Thomas v. Camden Trust Co.,* 59 *N. J. Super.* 142, 150 (*Law Div.* 1959). In still other instances they have declined to find the bar inapplicable though the plaintiff admittedly knew nothing about the cause of action until shortly before the institution of his action; in reaching this result they were not unaware of the individual injustice to the plaintiff but presumably determined that, on balance, it was outweighed by the need for repose and the danger that a different approach might undermine the statutory goal. See *Sullivan v. Stout, supra,* 120 *N. J. L.* 304; *Gogolin v. Williams, supra,* 91 *N. J. L.* 266. For present purposes we need not question these instances for we are satisfied that the case at hand falls within a special grouping or "class of cases" (1 *Wood, supra,* at *pp.* 685, 686) where the period of limitations may and should fairly and justly be said to begin to run when the plaintiff knows or has any reason to know about the foreign object and the existence of the cause of action based upon its presence; to the extent that *Weinstein v. Blanchard, supra,* 109 *N. J. L.* 332, embodies a contrary view, it is hereby disapproved.

It must be borne in mind that Mrs. Fernandi's claim does not raise questions as to her credibility nor does it rest on matters of professional diagnosis, judgment or discretion. It rests on the presence of a foreign object within her abdomen following an operation performed upon her by the defendant-doctors. Here the lapse of time does not entail the danger

of a false or frivolous claim, nor the danger of a speculative or uncertain claim. The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, at least in this highly confined type of case, without any undue impairment of the two-year limitation or the considerations of repose which underlie it. If, as is to be hoped, the resulting jeopardy to defendants produces a greater measure of care in connection with surgical operations, so much the better. The summary judgment entered in the Law Division is:

Reversed and the cause is remanded for trial.

HALL, J. (dissenting). This is without doubt a "hard" case. One's sympathies naturally run with the plaintiff and some sense of revulsion arises when the statute of limitations is even urged as a defense in a case as factually clear-cut as that disclosed by the present record. However, even on this score a more thoughtful analysis indicates that the situation cannot be considered entirely one-sided. A defendant, too, has rights and interests involving the merits which cannot be cast aside. His liability is not absolute but rests on negligence. He must, practically speaking, convince the fact-finder that he was not negligent under the legal standards of conduct applicable in medical malpractice actions. Evidence to support such a defense must come largely from the oral testimony of those present at the operation. While a plaintiff's essential evidence to establish a cause of action may well be preserved indefinitely, as here by the foreign object's remaining in her body, the defense may be badly hurt by the disappearance of witnesses or dimmed recollections through the passage of time.

But my disagreement with the majority rests on a much more fundamental base. It is unquestionable on the record

before us that the alleged negligence of defendants and the resultant injury happened at one precise moment of time, *i. e.,* when the operation on plaintiff was performed and the wing nut remained within her body, that no inequitable conduct by defendants has occurred which could preclude the application of the statute of limitations, and that the situation does not fall within any of the legislative exceptions. The words of the statute are plain and all-inclusive— "Every action at law for an injury to the person  *  *  * shall be commenced within 2 years next after the cause of any such action shall have accrued." *N. J. S.* 2A:14–2. The majority concludes that this language should not apply in this foreign object malpractice suit. It says that the language keying operation of the statute to the "accrual of the cause of action" is obscure and subject to judicial interpretation on what amounts almost to a case-by-case basis. In essence the decision is a judicial resolution of competing policies in a particular fact situation—repose against stale claims and the prejudicial consequences of delay to a defendant from fading memories and lost evidence on the one hand, and the rights of an injured person who did not have and could not have had timely knowledge of his right of action on the other. My view is that, as desirable as the result here may appear to be, this is a policy decision which can fittingly be made only by the legislative branch. See *Biglioli v. Durolest Corp.,* 26 *N. J.* 33, 44 (1958).

Judge Magruder succinctly summarized the thesis in *Tessier v. United States,* 269 *F. 2d* 305 (1 *Cir.* 1959), where he was confronted with the identical situation under a comparable federal statute:

"It is argued on one hand that the statute of limitations expresses a policy of repose and should be interpreted accordingly. Undeniably the legislature intends to strike down all stale claims, meritorious as well as frivolous. On the other hand, it is said that a person has in effect no remedy if his claim is barred before he knows that he has been wronged, and that such a person can not be accused of sleeping on his rights. This court cannot resolve this policy conflict. In the present state of the law we cannot possibly say, contrary to

the plain mandate of 28 *U. S. C.* § 2401(b), that Congress intended that the statute be suspended until the plaintiff knows of the wrong; and we cannot remold the statute in the image of the equitable doctrine of laches." (269 *F. 2d*, at *p.* 310.)

The legal soundness of this conclusion rests on a very solid and enduring foundation. Limitations of actions, created entirely by statute, are peculiarly legislative and not judicial acts. At common law there was no fixed time for the bringing of suits. 53 *C. J. S. Limitation of Actions* § 1, *p.* 905; *Uscienski v. National Sugar Refining Co.*, 19 *N. J. Misc.* 240 (*C. P.* 1941); *Hart v. Deshong,* 40 *Del.* 218, 8 *A. 2d* 85 (*Super. Ct.* 1939). The judicial branch consequently does not have the responsibility for or freedom of development and change which it does when concerned with common-law principles originally judge made. When the Legislature has spoken clearly and fully, judges are obligated to follow, whether or not as individuals they agree with the enunciated policy either generally or as it may affect a particular case or class of cases.

A statute of limitations, like any line drawn where something which falls on one side is good and something which falls on the other is bad simply because it fails to meet the artificial criterion of the line, is necessarily arbitrary. Such is the very nature of the idea of limitation of actions. The statute bars whether the suit be commenced the day after the time period expires or years later. Contrawise it has no application even though the action be instituted on the last day before expiration and witnesses are just as unavailable as they would be if the complaint were filed 24 hours later.

The appropriateness of time periods fixed by limitation statutes, as well as the reasons for the variations therein, which in this state run from two months to at least 20 years (*N. J. S.* 2A:14-1 to 20 inc.), have always been considered policy questions for the Legislature and not of judicial concern. *Union City Housing Authority v. Commonwealth Trust Co.*, 25 *N. J.* 330, 342-343 (1957). Similarly, and

of vital importance here, exceptions delaying the commencement or extending the period have long been held to be matters exclusively within the legislative province. In this State they are confined generally to situations of infancy, insanity, non-residence, death and military service. *N. J. S.* 2A:14–21 to 23 inc.; 2A:14–26. This fundamental was cogently expressed in the leading case of *Board of Chosen Freeholders of Somerset County v. Veghte,* 44 *N. J. L.* 509 (*Sup. Ct.* 1882) and reiterated by a majority of this court in a slightly different context less than a year ago. *Higgins v. Schneider,* 61 *N. J. Super.* 36, 43 (*App. Div.* 1960), affirmed on opinion below 33 *N. J.* 299 (1960). In *Veghte,* Justice Magie quoted a meaningful sentence from an early opinion [*McIver v. Ragan,* 2 *Wheat.* 25, 4 *L. Ed.* 175] by Chief Justice Marshall in a case involving what was claimed to be an inequitable result produced by a statute of limitations:

" 'If this difficulty be produced by the legislative power, the same power might provide a remedy, but courts cannot, on that account, insert in the statute of limitations an exception which the statute does not contain.' " (44 *N. J. L.,* at *p.* 513.)

So it seems to me that, as a matter of broad principle, the majority has gone beyond the well established bounds for judicial action in this area where the policy decision peculiarly belongs to the Legislature. I doubt that courts advance the proper relationship between the branches of government under our system or, in the long run, the cause of even, stable and just administration of law in all matters when we decide a case on the tacit, underlying premise that the Legislature, in a field particularly its own, has originally acted unwisely or too strictly and has failed to make corrections as we think it should have.

To turn to the more specific legal basis given for the majority result, it would not seem that there is anything really obscure, in the present context, about what the Legislature meant in relating the commencement of the time

period to the date of accrual of the cause of action. The selection of the vital event is, of course, also a policy matter within the legislative realm, binding on the judiciary. Our basic statutes (*N. J. S.* 2A:14–1 and 2), in accord with the pattern in most jurisdictions, were taken from the first English limitation act enacted in 1623. Note, "Developments in the Law, Statutes of Limitations," 63 *Harv. L. Rev.* 1177, 1178–1179 (1950); *Board of Chosen Freeholders of Somerset County v. Veghte, supra* (44 *N. J. L.,* at *p.* 513).

The concept of accrual of a cause of action has had a clear and certain connotation in the law from earliest days and there has never been any difficulty in determining what the legislature intended when the statute was first enacted and, absent language change, what it continues to mean. That universal meaning was most recently repeated by this court in *Tortorello v. Reinfeld,* 6 *N. J.* 58, 65 (1950) (a malpractice case):

"* * * we consider it to be firmly settled that by the 'accrual' of a cause of action * * * is meant the time when a right first arises to institute and maintain an action for the invasion of one's rights against the wrong-doer, and the statutory period is computed from that time * * * Any wrongful act or omission resulting in any injury to the person, though slight, for which the law provides a remedy gives rise to a right to institute an action therefor and the cause of action is said to accrue at that time. The statute of limitations attaches at once and commences to run from that time irrespective of the time when the injury is discovered or the consequential damages result."

This is the same definition found in the early landmark case of *Larason v. Lambert,* 12 *N. J. L.* 247, 248 (*Sup. Ct.* 1831) and must have been considered thoroughly settled even then since no authority is there cited to support it.

Our courts have, until the instant case, always followed the concept in applying the bar of the statute to factual settings as "hard" as the one before us whenever some element of the cause of action was not or could not be discovered until the limitation period had run (unless under equally long established principles the wrong was realistically a

continuing one or there was some inequitable conduct by the defendant precluding him from asserting the bar). In the medical malpractice field, we have been, heretofore, in agreement with the results reached in the vast majority of jurisdictions (see Annotations 74 *A. L. R.* 1317 (1931), 144 *A. L. R.* 209 (1943)) that, where the wrongful conduct consists of a single act, the statute begins to run from the time of that act despite hardship or apparent inequities. *Weinstein v. Blanchard,* 109 *N. J. L.* 332 (*E. & A.* 1932); *Tortorello v. Reinfeld, supra; Bauer v. Bowen,* 63 *N. J. Super.* 225 (*App. Div.* 1960). In other fields, where incidentally I fail to see any difference in principle and therefore equally affected by the majority opinion, see *Gogolin v. Williams,* 91 *N. J. L.* 266 (*E. & A.* 1917) (late discovery of erroneous land survey by surveyor); *Sullivan v. Stout,* 120 *N. J. L.* 304 (*E. & A.* 1938) (late discovery of erroneous title search by attorney); *French v. U. S. Fidelity & Guaranty Co.,* 88 *F. Supp.* 714, 723–724 (*D. C. N. J.* 1950) (ignorance of identity of individual participants in alleged malicious prosecution until after statutory period had expired); *Stanley Development Co. v. Millburn Township,* 26 *N. J. Super.* 328 (*App. Div.* 1953) (late discovery of obstruction of property right). See also *Burns v. Bethlehem Steel Co.,* 20 *N. J.* 37 (1955), in which this court refused to hold a personal injury claim grounded in contract to be embraced by the six-year statute, as against the two-year period, where it seems probable the damage did not fully manifest itself until after the latter period had expired. It seems safe to conclude that the majority has, in effect, cast aside the firmly entrenched meaning of accrual of a cause of action—a policy decision which, I repeat, belongs to the Legislature—and supplanted it with a fluid judicial concept which moves to meet each case according to what the court deems equitable under the circumstances.

The majority's reliance on occupational disease cases (*Urie v. Thompson,* 337 *U. S.* 163, 69 *S. Ct.* 1018, 93 *L. Ed.* 1282 (1949) and the trial court opinion in *Hughes v. Eureka*

*Flint and Spar Co.,* 20 *N. J. Misc.* 314 (*Cir. Ct.* 1939); but see appellate court opinion apparently to the contrary, *Biglioli v. Durotest Corp.,* 44 *N. J. Super.* 93 (*App. Div.* 1957), affirmed 26 *N. J.* 33 (1958)), as analogous authority to support the result reached seems to me inappropriate. There the far different circumstance of exposure to the damaging agent over a long period of time, as Judge Magruder observed in *Tessier,* "prevented an accurate determination, even in retrospect, of when the harm to the plaintiff (without which the negligence was not actionable) actually happened." 269 *F. 2d,* at *p.* 309. To the same effect, see *Fowkes v. Pennsylvania Railroad Co.,* 264 *F. 2d* 397 (3 *Cir.* 1959). It is interesting to note that our present law in such cases, now wholly covered by workmen's compensation, keys the commencement of limitations to the date on which the employee ceased to be exposed or when he knew or ought to have known the nature of his disability and its relation to his employment, whichever is the later. *N. J. S. A.* 34:15–34.

The situation just referred to illustrates that the Legislature has not been static or unmindful with respect to matters of limitation of actions. It has also changed time periods. For example, claims for intentional personal injuries formerly had a four-year limitation (*Rev.* 1877, *p.* 594); now it is two years (*N. J. S.* 2A:14–2). Slander originally was actionable if the suit was commenced within two years after the speaking of the words (*L.* 1896, *p.* 119); presently actions for it or libel must be started within one year of the publication (*N. J. S.* 2A:14–3). New, particular acts have been adopted to meet situations which the Legislature must have determined were not justly covered by the general sections. See, for instance, *N. J. S.* 2A:14–11, enacted in 1950, prescribing that any private claim of right in a public way in which the public rights have been vacated must be asserted within one year of the adoption of the vacation ordinance. And in situations where we must assume sound policy so indicated, it has prescribed different events than the accrual

of the cause of action for the commencement of the statutory period, as in the wrongful death statute, where the time runs from the date of death itself, not from the occurrence of the defendant's act which ultimately caused the demise (*N. J. S.* 2A:31-3), and as in actions on fiduciaries' bonds, insofar as the surety is concerned, where the limitation commences with the date of the bond rather than with that of the actionable breach of the condition (*N. J. S.* 2A:14-16).

To me, all of this leads to the conclusion that so long as our general limitation sections, keyed to the accrual of the cause of action, remain in their present form, they represent continuing determinations of competing policies by the Legislature which the judiciary should not attempt to alter because it considers them unjust in particular situations. Problems of the type involved in this case are not new. The statute has no gaps or broad imprecise language necessitating construction. The appropriate role of the Legislature in making law cannot be disregarded. In spite of common knowledge of the ordinary workings of the legislative process, the judicial branch is bound to assume that the Legislature was and is aware of the problems, that it concluded once that a strict, all-inclusive approach is best on balance and that it has not yet changed its mind in the instant sphere. Until it does, as for example Missouri did by expressly providing that a cause of action accrues when the damage is sustained and is capable of ascertainment (Mo. Code, §§ 516.100, 516.140), the judiciary's task is to apply the plain words of the statute as they are written and not enter a field of policy determination alien to its allotted function.

I would affirm the judgment of the Law Division.

Justice HANEMAN authorizes me to say that he joins in this dissent.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Justices HALL and HANEMAN—2.