**Paul E. RePASS, Appellant,**

v.

**Albert L. VREELAND and Leonard G. Brown, individuals, and Vreeland & Brown, a New Jersey Partnership in the Practice of Law.**

**No. 16632.**

United States Court of Appeals Third Circuit.

Argued Nov. 20, 1967.

Decided Jan. 31, 1968.

982

Freedman, Circuit Judge, dissented.
See also 3 Cir., 357 F.2d 801.

Milton Diamond, Highland Park, N. J.,
for appellant.

Joseph F. Faccone, Jr., Williams, Wil-
lette and Faccone, East Orange, N. J.
(Donald L. Berlin, East Orange, N. J.,
on the brief), for appellees.

OPINION OF THE COURT

Before HASTIE, FREEDMAN and
VAN DUSEN, Circuit Judges.

HASTIE, Chief Judge.

This is a diversity action by a Mis-
souri physician against his former New
Jersey attorneys for damages allegedly
caused by their negligent failure to file
an action for him until after the statute
of limitations had run. Damages are
sought for the loss of the value of the
plaintiffs claim and for expenses in-
curred in attempting to recover on it.

Upon the basis of the pleadings and
depositions, the district court granted
partial summary judgment for the de-
fendants upon the demand for the loss
of the value of the plaintiff's claim.
Jurisdiction was retained over the de-
mand for the amount of the plaintiff's
expenditures. Upon the basis of a prop-
er determination and certification by the
trial judge, this appeal was taken pur-
suant to Rule 54(b), Federal Rules of
Civil Procedure.

The record shows that on May 6, 1960,
after earlier correspondence, the defend-
ants undertook to represent the plain-
tiff. By some time in June, 1960, the
plaintiff had supplied the defendants
with full information about his claim.
However, it was not until August, 1961
that the defendants filed suit as au-
thorized in the District Court for the
District of New Jersey. That court lat-
er dismissed the suit as barred by the
statute of limitations. RePass v. Keleket
X-Ray Corp., D.N.J. 1962, 212 F.Supp.
406.

Subsequently, the plaintiff filed the
present suit. The court below granted
partial summary judgment upon the
theory that counsel's delay in filing a
complaint could not have caused the bar-
ring of the action because it was barred
by the statute before counsel were re-
tained.

This legal conclusion was predicated
upon the following facts which appear
in the record and are not disputed. The
plaintiff's original cause of action was
against the manufacturer and seller of a
combination X-ray and fluoroscope ma-
chine which he purchased in 1932 and
used for some ten years thereafter. He
was then engaged in the practice of
"general medicine and surgery". In
1938 he observed that the cone which
confined the dangerous rays as they were
being emitted lacked a protective leaden
lining or shield. It was later to be the
theory of his claim against the manufac-
turing seller that this was a defect which
permitted noxious rays to escape through

the cone and injure his hand while he was operating the machine.

Between 1939 and 1941 the plaintiff began to observe "small irregularities, like little warts" on his left hand. Though these reappeared from time to time, they gave him no immediate serious concern and he treated the condition himself. He sold the X-ray machine in 1942.

During World War II, the plaintiff served as a medical officer in the Navy. Subsequently, he became a member of the faculty of the University of Colorado. There, in 1947, he became convinced, as a result of consultations with colleagues, that he was suffering from X-ray dermatitis of the left hand.

It is also relevant that in a letter of June 11, 1960, to counsel, the plaintiff wrote that in the early 1940's the condition "was not bad enough to keep me out of service in the Navy, but by the time I was ready to resume practice, cracks would develop which were hard to heal. This caused me to abandon general practice where I would have to scrub frequently for surgery".

From 1939 to 1959 the change in the condition of the hand was very gradual. However, in February, 1959, "one of the areas which had persisted for a little longer than usual was biopsied" with resultant disclosure of a malignancy that necessitated the amputation of a finger and the transplanting of skin on the other parts of the hand.

Both parties concede that the applicable statutory period of limitations is two years. N.J.S.A. 2A:14–2. The plaintiff contends that the statute did not begin to run until February 1959, when he discovered that his hand had become cancerous, and thus did not fully run until some eight months after he had provided counsel with the information necessary for suit. On the other hand, the court below concluded that the period of limitations began in 1947 and had fully run long before counsel were retained.

The court reasoned as follows:

"I am satisfied, on the basis of undisputed facts, that plaintiff's cause of action against the manufacturer of the X-Ray machine accrued in 1945, at which time he realized his condition was caused by 'too much X-ray on my left hand', and that his failure to wear gloves was responsible for the condition, or at the latest in 1947, when plaintiff was told by doctors in Colorado that he was suffering from X-Ray dermatitis. In any event, it is clear that the cause of action was outlawed years before plaintiff consulted defendants. To characterize his injury, as plaintiff does, as merely 'de minimus', until amputation actually took place in 1959, is unrealistic in this case. Plaintiff was a medical doctor who became a specialist in the field of radiology. He knew that cases of X-Ray dermatitis could worsen with time."

The New Jersey statute, like many others, makes the period of limitations begin to run at the time that the cause of action "shall have accrued". In some exceptional situations the New Jersey courts postpone the running of the statute until the wronged person becomes aware that the wrong has occurred and has caused him harm. Fernandi v. Strully, 1961, 35 N.J. 434, 173 A.2d 277. However, even if that doctrine is applicable here, there is no suggestion in the New Jersey decisions that, once the injured person is aware that the wrong has occurred and has caused him significant harm, the running of the statute can be further postponed until some unanticipated more serious condition or consequential damage results or is discovered. Indeed, even the jurisdictions most favorably disposed toward relaxing the stringency of statutes of limitations have not ruled that a cause of action accrues any later than first awareness that the wrong has caused significant harm. See Developments in the Law—Statute of Limitations, 1950, 63 Harv.L.Rev. 1177, 1200–07.

On the present record, the plaintiff was last subjected to harmful emissions from the X-ray machine in 1942, the year in which he sold it. By his own admission he knew by 1947 that he was suffering from persistent X-ray dermatitis to an extent that precluded the continuation of his engagement in general practice and surgery. Therefore, we agree with the district court that under New Jersey law the statute of limitations began to run in 1947, if not before.

The only alleged wrong with which this appeal is concerned is the defendants' failure to file suit before the statute of limitations had run. But they could not have done otherwise, since the statute had run before they were retained as counsel.

The judgment will be affirmed.

FREEDMAN, Circuit Judge (dissenting).

A plaintiff is being barred from recovery against his lawyers of the value of his serious personal injury case which he claims was lost by their negligent representation, simply because we now decide almost eight years later that at the time he retained them the statute of limitations against the tortfeasor had already expired. The lawyers, however, undertook to represent him and collected a substantial fee after assuring him that he had "a most excellent case."

It seems to me that even if the statute had already run when the lawyers accepted plaintiff's case, there was much which the record indicates they failed to do and which a jury might find would have been done by competent counsel. The biopsy disclosed plaintiff's cancerous condition which necessitated the amputation of his finger on February 9, 1959. It was on May 9, 1960, following earlier correspondence, that defendants undertook to represent him. The representa-

tion, therefore, began at a time when it might have been urged that the New Jersey two-year statute of limitations [1] had not yet expired. Adequate representation of plaintiff would have made clear to plaintiff's lawyers the need for a prompt pressing of the claim against the manufacturer of the x-ray equipment, especially in view of the uncertainty of the law relating to the statute of limitations in cases such as this and the strong current of change already reported throughout the country in malpractice cases where continuing and accumulating harm breaks out long afterward in overt manifestations.[2] They could have sought to effect a settlement of the claim against the manufacturer by pointing to this uncertainty in the law and might also have urged the practical consideration of the desirability of a settlement by a manufacturer of medical equipment instead of litigation which would advertise to the medical profession its negligence in the manufacture of the equipment which would be made known to other physicians who had also used it. Indeed, since the statute of limitations is only a permissive defense [3] they might have urged, if they were driven to bring suit, that it would be disastrous to the manufacturer's reputation to seek shelter in the bar of the statute of limitations and by this avoid meeting on the merits a charge of negligence in the manufacture of its x-ray equipment. Instead defendants held no discussions with the manufacturer for at least a year after they were retained on May 9, 1960, and suit was not brought until August 7, 1961. Thus, they did not even approach the manufacturer nor was suit instituted until after they had allowed more than two years to run subsequent to the biopsy and amputation on February 9, 1959, thereby removing whatever doubt they might otherwise

1. N.J.S.A. 2A:14-2.

2. See Daniels v. Beryllium Corp., 227 F. Supp. 591 (E.D.Pa.1964) and cases discussed therein; Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961); Estep & Van Dyke, Radiation Injuries: Statute of Limitations' Inadequacies in Tort Cases, 62 Mich.L.Rev. 753, 757-69 (1964).

3. Rutherford Nat. Bank v. McKenzie, 120 N.J.L. 594, 1 A.2d 12 (1938); Paruch v. Rasiewicz, 124 N.J.L. 356, 12 A.2d 141 (1940).

have urged as to the expiration of the statute of limitations.

In the suit that was ultimately brought, the manufacturer raised the statute of limitations and thereby succeeded in having plaintiff's action against it dismissed regardless of the merits of his claim. RePass v. Keleket X-Ray Corp., 212 F.Supp. 406 (D.N.J. 1962). In dismissing the action against the manufacturer the court merely held that the statute of limitations had begun to run at the latest on February 9, 1959, when the cancer was discovered. It is impossible, therefore, to say without making a factual decision now, what effect the delay may have had and what results adequate representation of plaintiff might have achieved by prompt negotiations with the manufacturer either in settlement to avoid litigation or in persuading it against pleading the bar of the statute of limitations.

It seems to me that plaintiff is entitled to submit to a jury all the circumstances which surrounded the acceptance by defendants of his case and the manner in which they conducted it thereafter. From these surrounding circumstances a jury would be entitled to decide the question of fact whether the lawyers who undertook to represent plaintiff were negligent in carrying out their obligation and whether such negligence proximately resulted in any damage to plaintiff beyond the fees and expenses which he paid them.

I believe that a factfinder might determine from the circumstances already revealed in the disclosures revolving about summary judgment that defendants negligently caused injury to plaintiff far beyond the expenses and counsel fees which he uselessly incurred. The amount of plaintiff's damages would be a question of fact to be determined in the light of the difficulties inherent in

his claim and what competent counsel might have been able to achieve in representing him. Plaintiff therefore should not be sent away without relief.[4]

I therefore dissent from the affirmance of the partial summary judgment in favor of defendants.

---

4. The complaint does not specifically allege items of negligence beyond those relating to the delay in instituting the action against the manufacturer, but the liberal provisions for amendment under Rule 15 of the Federal Rules of Civil Procedure are sufficient to permit amendment if the full development of the facts should be objected to by defendants on the ground that they fall outside the pleading.